In re ESTATE OF Charles Robert WAR-
DELL, Sr., ex rel., Charles Robert
WARDELL, Jr., Plaintiff-Appellant,

v.

Charlotte Mae Wardell DAILEY,
Defendant-Appellee.

Court of Appeals of Tennessee,
Eastern Section.

Dec. 9, 1983.

Permission to Appeal Denied by
Supreme Court May 7, 1984.

James L. Kennedy, and Earl S. Ailor, Asquith, Ailor & Jones, Knoxville, for plaintiff-appellant.

Thomas Privette, Jr., Witt, Waters, Valliant & Privette, and Charles C. Burks, Sr., Knoxville, for defendant-appellee.

## OPINION

SANDERS, Judge.

The Appellant, Charles Robert Wardell, Jr., has appealed from a chancery decree imposing a resulting trust on certain checking accounts and certificates of deposit in the joint names of himself and his deceased father.

Charles Robert Wardell, Sr., died testate in Knox County in March, 1982. He left surviving him his wife, Anna Mae Wardell, as the sole beneficiary of his will. He also left surviving him a son, Appellant Charles Robert Wardell, Jr., and a daughter, Appellee Charlotte Mae Wardell Dailey. The will provided the son and daughter should act as co-executors of the will upon failure of the wife to so qualify. It also provided for an equal division of the properties of his estate between them in the event his wife should predecease him.

The wife was physically and mentally incapable of qualifying as executrix and the son and daughter qualified as co-executors. After qualifying as co-executors they were unable to agree as to the ownership of the bulk of the estate which consisted of approximately $375,000 which the deceased had placed in the joint names of himself and Charles Robert Wardell, Jr., composed of a checking account and some 15 certificates of deposit and money market certificates. It was the insistence of the Appellant that these funds passed to him by virtue of his survivorship of his father, while the Appellee contended he held the funds in trust and they should go to their mother under the provisions of the will.

The Appellant filed a petition in the chancery court in the nature of a declaratory judgment asking the court to hear proof and determine how the monies were held and how they should pass.

The Appellee filed a counter complaint in which she asked the court to declare a resulting trust on the monies in the joint accounts for the benefit of their mother.

In his determination of the case the court found the funds did pass to the Appellant upon the death of his father but he further declared a trust on the funds, finding they were to be used for the benefit of the father if he became disabled and to be used for his wife's benefit in the event the father should predecease her. The court held the Appellant should use the funds to maintain the home and for the benefit of the mother, to provide for her care, upkeep, medical care, and everything reasonably required. He found the trust should remain in effect so long as Mrs. Wardell lives and upon her death the trust would terminate and any unused funds at her death would go to the Appellant and the Appellee in equal shares as the heirs of Mr. Wardell, Sr.

On appeal the Appellant has presented the following issues for review: "1. Does a joint bank account agreement with right of survivorship establish a contract which transfers the account proceeds at the death by operation of law? 2. Can the Courts create a Trust out of a joint and survivorship account to require the survivor to hold the money in Trust for the lifetime of his mother and then be required to divide the corpus of the Trust with his sister at the mother's death?"

We think the answer to both of these issues is in the affirmative. The leading case in this jurisdiction on the question of the right of a survivor under a joint certificate of deposit with the right of survivorship is *Lowry v. Lowry*, 541 S.W.2d 128 (Tenn.1976). In that case the court held that, absent clear and convincing evidence of a contrary intention, a joint account

agreement with rights of survivorship established a contract which transfers the account's proceeds at death to the survivor by operation of law. However, there is nothing in that opinion which would indicate that a donor of the funds under such contract may not impose such conditions as to create a trust in the donee.

"Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called *presumptive* trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called *resulting* trusts, because the trust is the result which Equity attaches to the particular transaction. Gibson's Suits in Chancery, § 382 (6th Ed.1982).

■ As a tool of equity, the resulting trust will be decreed when necessary "to prevent a failure of justice." 76 Am.Jur.2d *Trusts* § 196 (1975). In *Wells v. Wells,* 556 S.W.2d 769, 771 (Tenn.App.1977), this court stated that such "trusts are judge-created trusts or doctrines which enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another."

The resulting trust may be created in a variety of situations, for example "[w]here a deed by father to son is shown to be for the benefit of the mother." *Gibson's Suits in Chancery,* § 976, n. 2 (5th Ed.1956). This court, more than fifty years ago, in *Savage v. Savage,* 4 Tenn.App. 277 (1927), confronted a somewhat similar situation. There, the plaintiff, after purchasing a lot with a house on it, had conveyed the same to his father to be held in trust for the former and other third persons, while the former went "north, [to] work where he could get better wages" in order to pay off the notes on the land. *Id.* at 279. While the plaintiff/son was absent, the father remarried and later died, after which the widow claimed the land. In establishing a

resulting trust in favor of the son, the court stated that "[w]hen property is conveyed or given by one person to another, to hold for the use of a third person, such a trust will thereby be created as will give equity jurisdiction to compel the application to the purposes of the trust." *Id.* at 284.

■ The equitable power to establish a resulting trust applies with respect to both real and personal property. 89 C.J.S. *Trusts* § 98 (1955). In either case, "[i]t is ... uniformly held that resulting trusts may be, and generally are, proved by parol evidence." *Chappell v. Dawson,* 202 Tenn. 672, 308 S.W.2d 420, 422 (1957). *See also Butler v. Rutledge,* 42 Tenn. (2 Cold.) 4 (1865); *Savage, supra,* 4 Tenn.App. at 283. *See generally* 89 C.J.S. *Trusts* § 101, 133 (1955); *Gibson's Suits in Chancery,* § 976, n. 2 (5th Ed.1956). However, when one attempts to create a resulting trust on the basis of parol evidence, such a trust must be shown by more than a mere preponderance of the evidence. *See Stone v. Manning,* 103 Tenn. 232, 235, 52 S.W. 990 (1899); *Browder v. Hite,* 602 S.W.2d 489 (Tenn.App.1980). Instead, "[w]hile an implied or resulting trust may be established by parol evidence, yet both upon reason and authority the courts will not enforce it, unless it be established by the most convincing and irrefragable evidence. In other words, it must be sustained by proof of the clearest and most convincing character. To sustain a resulting trust upon parol evidence in the teeth of the terms of the written instrument, it is not essential that the evidence be of a character to remove all reasonable doubt, but only that it be so clear, cogent and convincing as to overcome the opposing evidence, coupled with the presumption that obtains in favor of the written instrument." *Savage, supra,* 4 Tenn.App. at 285. *See also Sullivan v. Sullivan,* 86 Tenn. 376, 6 S.W. 876 (1888); *Hoffner v. Hoffner,* 32 Tenn.App. 98, 221 S.W.2d 907 (1949).

■ The proof shows that Mr. Wardell was a very hard working, industrious and frugal person. Through hard work and frugality he accumulated a substantial and

very liquid estate. He was 82 years of age at the time of his death and his wife was approximately the same age. She had been in poor health for some time before his death and had been confined to a nursing home for about a year before that time. Although he had a substantial amount of cash assets, in the last few years of his life he was greatly concerned as to whether or not he would have sufficient funds to take care of his wife, his wife's illness and his own needs. His next-door neighbor testified that his concern was that he would have enough money to take care of his wife and then his own needs if he got sick. His daughter described his concern about these matters by saying he was "paranoid" about the money situation. Prior to 1980 Mr. Wardell had kept his savings accounts primarily jointly in the names of himself and his wife. However, she became blind and unable to look after business and in the latter part of 1980 she requested that her name be removed from the joint checking account and savings account. The name of the Appellant was then placed on the accounts instead. Following this Mr. Wardell, Sr., had the name of the Appellant placed jointly with him on virtually all certificates of deposit and money market certificates, resulting in his being the joint owner of most of the estate at the time of Mr. Wardell's death.

Due to a handicap of the Appellant's, his testimony is somewhat fragmented and disconnected. However, after reading, studying and re-reading his testimony, we think a fair analysis of his testimony is to the effect that his father put the funds in the joint accounts in the name of the Appellant only because his mother was unable to manage her own affairs. The Appellant was to exercise no dominion or control over the funds unless his father died or became unable to manage the funds. If the father died the Appellant was to use the funds for the upkeep of the home and to take care of his mother. If the father became disabled he was to use the funds to take care of him. It further appears the Appellant understood the intention of his father and since his death he had been making a conscientious effort to abide by the trust placed in him.

The chancellor filed a very comprehensive memorandum opinion in which he said:

"We think while there is some other general testimony as to Mr. Wardell, Sr.'s intentions, that the testimony of Robert as clearly as anything else establishes his father's intention and controls the outcome of this case.

\*     \*     \*

"It is the contention of Robert asserted in this proceeding that the funds which he has acquired in the joint accounts are outright his. Now, this is the assertion of counsel on his behalf. But his testimony doesn't really back up that position. Robert quite candidly testified that, "I am not claiming these C.D.'s, these accounts, to be mine." He said he was using them to pay expenses. Robert testified that his father told him everything to do upon his father's death and gave him keys to the box where he could obtain his father's papers. Also Robert had in his own home a steel box containing documents of his father. Robert said that his father—I presume his father told him this—that his mother would survive his father and she would not be able to look after herself and that he, Robert, was to provide the necessary things for her.

"Robert testified that, in response to questions by the Court, his father told him while Mom was alive he was to keep everything rolling and rolling good. He said that his father wanted him, in the event his father could not sign papers, to sign the papers for him. Since his father's death Robert has paid the expenses, as he described, that is, the expenses of keeping up the house and has paid for the care of his mother and her medical expenses and needs. Thus Robert is doing precisely what he said his father told him to do with this money in these accounts. We think the clear, convincing and cogent evidence here is that these funds were made joint with Robert so that prior to the death of Mr. Wardell, Sr., Robert could use them for

the care of Mr. Wardell, Sr., and Robert's mother; and that after the death of Mr. Wardell, Sr., that Robert could use the funds for the upkeep of the house and care of his mother. The evidence is so total and complete on that that no other conclusion can be reached.

"We think, then, that Mr. Wardell declared a trust in effect for these assets, these accounts, and that he continued to maintain them and roll them over, as the term was used, so they would be available to provide for him and his wife for the rest of their lives; and that Robert was to be the trustee of this trust."

We concur with the findings of the chancellor. The issues are found in favor of the Appellee. The decree of the chancellor is affirmed and, in our discretion, the cost of this appeal is taxed to the estate.

GODDARD and FRANKS, JJ., concur.

## ON PETITION TO REHEAR

The Appellant has filed a petition to rehear. In particular, the petition respectfully asks the court to reconsider its holding that a resulting trust was imposed on deposits in the savings and loan associations. It points out that the court did not address the provisions of T.C.A. § 45–3–508 which relate to joint accounts in savings and loan associations and, as pertinent here, provide:

> "The opening of the account in such form shall be conclusive evidence in any action or proceeding to which either the association or the survivor or survivors is a party, of the intention of all of the parties to the account to vest title to such account and the additions thereto in such survivor or survivors."

The Appellant says he construes this section of the Code to give him the savings and loan accounts as his sole and separate property.

 We agree with the Appellant that under the provisions of the statute the legal title to the accounts did pass to the Appellant, but that was also true of the other joint accounts in the estate. Although the legal title passed to the Appel-

lant, "equity infers or assumes that the beneficial interest did not go with the legal title." See annotations in original opinion.

The petition to rehear is respectfully denied, with cost.

SANDERS, GODDARD and FRANKS, JJ., concur.