**Deborah J. (Osborne) LATSHAW, Plaintiff/Appellee,**

v.

**David L. LATSHAW, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Knoxville.

Nov. 21, 1989.

Application for Permission to Appeal Denied by Supreme Court Feb. 26, 1990.

Lynne D. Swafford, Dayton, for defendant/appellant.

William G. McPheeters, Dayton, for plaintiff/appellee.

TOMLIN, Presiding Judge (Western Section).

Deborah Latshaw ("plaintiff") filed suit against David L. Latshaw ("defendant") in the Circuit Court for Rhea County seeking a declaratory judgment of that court to establish her rights in certain real and personal property. The trial court treated the suit as one to establish a resulting trust. After declaring plaintiff's rights in the personal property, following a non-jury trial the court found that a resulting trust in favor of plaintiff existed in a one-half undivided interest in a subdivision lot on which defendant had built a residence. Defendant appeals from the trial court judgment

only as it affects the real estate and presents two issues on appeal: (1) Did the trial court err in imposing a resulting trust in the real estate for the benefit of plaintiff? (2) If the trial court did not err, is plaintiff entitled to a resulting trust in a one-half interest of the improvements erected upon the property? Inasmuch as our resolution of the first issue is dispositive of the case, we do not reach the second issue. We find the trial court erred and dismiss.

The parties were husband and wife and parents of two minor children. They were divorced in August, 1979. At the time of the divorce the parties owned lots 11, 12 and 13 in the Pine Hill Subdivision. The marital home was located on lot 13. The divorce decree provided that the parties would own this property as tenants in common, subject to the right of plaintiff and the parties' minor children to live in the home until the younger child reached the age of eighteen.

Sometime in 1980 the parties resumed living together in their former home without the benefit of marriage. They and their two children lived together until sometime in December, 1987, when defendant left.

In October, 1983, defendant asked plaintiff to sign over her one-half interest in lot 12 in order to permit him to build a house on it. This house was to serve as their new home. Plaintiff agreed, and executed a deed to defendant for her one-half interest in lot 12. The warranty deed reflected a consideration of "ONE ($1.00) DOLLAR and other good and valuable consideration...." As additional consideration, defendant paid off the balance of the debt due on the parties' home located on lot 13, totaling $3,402.78 plus accrued interest. With the execution of this deed, defendant owned lot 12 outright. He and plaintiff continued to own lots 11 and 13 as tenants in common.

During the next three years, defendant, acting as his own contractor, constructed a log home on lot 12. From time to time he was assisted in the construction by plaintiff's brothers as well as several of his friends. Sometime in 1986, plaintiff and defendant and their two children moved into the new log house. Thereafter, plaintiff began renting out the old home on lot 13, using the income therefrom for her own personal use. After the parties moved into the new home on lot 12, defendant paid all the house payments, all the utility bills and even paid the monthly payments on plaintiff's van. For the most part, the parties took turns every other week buying the groceries.

In March, 1987, defendant was transferred to Chattanooga. For several months he commuted between Rhea County and Chattanooga. He subsequently rented a place in Chattanooga. During that period of time the relationship between the parties deteriorated rapidly. In December, 1987, defendant asked plaintiff to remove herself from the home.

In July, 1988, this present suit was filed by plaintiff. At about the same time, defendant filed a detainer warrant in the General Sessions Court for Rhea County seeking to have plaintiff removed from the premises. In October of that year, defendant was transferred back to Rhea County. When he attempted to return to his new home, he was arrested for criminal trespassing and later enjoined by a temporary restraining order from returning to his home. Plaintiff and the parties' two children continued to reside in the house up to the time of trial. At all times defendant has made and continues to make all the house payments and to pay the utility bills incurred there.

## I. THE RESULTING TRUST ISSUE

### A. The Nature of Plaintiff's Claim

Plaintiff filed this suit as a declaratory judgment. In her complaint she based her claim to the one-half interest in the property she conveyed to defendant upon the doctrine of marriage by estoppel. She contended that defendant was estopped to deny her rights in the property on the basis that they had cohabited together and held themselves out as husband and wife, not-

ing that they built a new house in which they continued to raise their children.

In her brief before this Court, while she acknowledges the legal definition of a resulting trust, plaintiff does not seek to have the doctrine of resulting trust applied as a basis for her claim. Instead, she asserts that she has a right to the property on the ground of marriage by estoppel, citing the case of *Hale v. State*, 179 Tenn. 201, 164 S.W.2d 822 (1942). Our Supreme Court in *Crawford v. Crawford*, 198 Tenn. 9, 277 S.W.2d 389 (1955), held that the doctrine of marriage by estoppel should never apply in cases where the parties knowingly live together unlawfully and are privileged to discontinue that relationship at will, distinguishing this set of circumstances from the earlier case of *Smith v. North Memphis Savings Bank*, 115 Tenn. 12, 89 S.W. 392 (1905), on which the *Hale* court relied. Not only is the doctrine of estoppel virtually nonexistent in this state, it has no application to the facts such as presented by the case under consideration.

### B. A Resulting Trust

Considering the nature of the pleadings before us, the trial court utilized the concept of liberality of pleadings in seeking to give plaintiff relief on the principle of a resulting trust. While a resulting trust may arise from one of several circumstances, the trial judge's memorandum opinion sheds no light on the specific circumstances by which he reached this conclusion. We respectfully disagree with the trial court and hold that no resulting trust was created.

Tennessee Jurisprudence has this to say regarding a resulting trust:

> § 11 **Generally.**—A resulting trust arises: 1., When property is conveyed, or devised, on some trust which fails in whole or in part; 2., When land is conveyed to a stranger without any consideration, and without any use, or trust, declared; 3., Where the property is purchased and the title taken in the name of one person, but the purchase price is paid by another; and 4., Where the purchaser pays for the land but

takes the title, in whole or in part, in the name of another.... A resulting trust arises when title is taken in a specific party's name, by intention of the parties....

24 Tenn.Jur. *Trusts and Trustees* § 11 (1985). *Gibson's Suits in Chancery*, 382 (6th Ed.1982), described resulting trusts as follows:

> Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called presumptive trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called resulting trusts, because the trust is the result which Equity attaches to the particular transaction.

Furthermore, our courts have held that resulting trusts may be, and generally are, proven by parol evidence. *Chappell v. Dawson*, 202 Tenn. 672, 308 S.W.2d 420, 422 (1957). In such a case, a resulting trust must be shown by more than a mere preponderance of the evidence. *Browder v. Hite*, 602 S.W.2d 489 (Tenn.App.1980). To sustain a resulting trust on oral evidence in the face of the terms of a written instrument the evidence must be so clear, cogent and convincing so as to overcome the opposing evidence, coupled with the presumption that obtains in favor of the written instrument. *Estate of Wardell Ex Rel. Wardell v. Dailey*, 674 S.W.2d 293 (Tenn.App.1983).

Prior to the execution of the warranty deed in question, defendant testified that he asked plaintiff to sign over to him her interest in lot 12, as he wanted to build a home. Plaintiff testified that she executed the deed "because he [defendant] told me in order for him to get the loan to build this house without my name being on it, I had to sign him the land over."

Larry Cunningham, a loan officer with Production Credit Association, testified

that defendant applied for a $12,000 loan to construct a new home on lot 12. The loan application was in the name of the defendant alone. Cunningham testified that he told both defendant and plaintiff that so long as the property was in both their names, defendant could not borrow the money in his name only.

Although its relevancy is doubted substantially, it might be noted that plaintiff testified that defendant had "promised" to marry her sometime in the future, which defendant denied. However, even if true, such a promise was in no way connected to the real estate question here challenged by plaintiff. The above is the substance of the material testimony by the parties.

In the face of this parol evidence, we note that the warranty deed executed by plaintiff to defendant recites a consideration, though a nominal one. In addition, we have the uncontradicted evidence that Husband satisfied Wife's half of the indebtedness remaining on the parties' original residence, amounting to $1,700 plus accrued interest.

We are of the opinion that the principles laid down in *Greene v. Greene*, 38 Tenn. App. 238, 272 S.W.2d 483 (1954), are controlling here. The theory on which a resulting trust was sought to be had in *Greene* is different from the theory which might be applied to the case under consideration.[1] *Greene* presented a controversy between a sister and three brothers over the ownership of a one-half undivided interest in realty and personalty. The sister claimed that a deceased brother held this property subject to a resulting trust in her so that she owned a one-half interest. In her cross-complaint, she alleged that she and her deceased brother entered into an agreement to live on a farm together, to purchase the interest of others, to build a new home for themselves and to operate the farm. She alleged that as lands were purchased, the legal title was to be taken by the brother and held by him for their joint use and benefit. She further alleged that pursuant to their agreement, she lived

on the farm with brother, where she kept house, did the housework, raised certain small animals and assisted her brother in the operation of the farm. She further alleged that in the deed conveying her undivided interest in the home place of their parents to brother, while the deed made a formal recitation of $100 consideration, no consideration was paid in fact, as the conveyance was made pursuant to the above-stated agreement.

There was a jury verdict in favor of the sister, declaring that a resulting trust should be impressed in her favor. In reversing the trial court and dismissing sister's cross-bill, the Middle Section Court of Appeals did so on at least two grounds, both of which are clearly applicable here. First of all, the *Greene* court declared that "To set up a resulting trust by parol requires a greater degree of proof than a mere preponderance of the evidence. The evidence must be clear and convincing." [citing authorities] *Id.* at 488. The Court went on to hold that the evidence upon which sister relied fell short of establishing a resulting trust in the real estate to which her brother held title.

Secondly, the *Greene* court held that the sister could not claim that any trust resulted to her in regard to her undivided interest, which she conveyed to her brother by deed containing a recited consideration. In support of this position the Court stated:

It is elementary that a grantor, who by his deed conveys real estate to another person upon a valuable consideration, cannot claim that any trust resulted to himself from such conveyance or that his grantee took the title subject to any such trust. In Pomeroy's Equity Jurisprudence (5th ed.), sec. 1036, p. 69, it is said:

"If, therefore, there is in fact no consideration, but the deed recites a pecuniary consideration, even merely nominal, as paid by the grantee, this statement raises a conclusive presumption of an intention that the grantee is to take the beneficial estate, and destroys the possibility of a trust resulting to

---

1. We say "might be applied" for the reason that no theory of a resulting trust was advocated by

plaintiff either in her pleadings or in her appellate brief.

the grantor, and no extrinsic evidence would be admitted to contradict the recital, and to show that there is in fact no consideration,—except in a cause of fraud or mistake."

*Id.* at 489. *See also* Bogert, *Trusts & Trustees*, § 453 rev. 2d ed. (1977). Inasmuch as neither fraud nor mistake was pled or proven, plaintiff is estopped to deny and is conclusively bound by this recital of a valuable consideration in her deed. As if this were not enough, there is the admitted additional consideration moving from defendant to plaintiff of defendant's paying the entire remaining balance owed on the parties' first residence, which was a joint debt of both parties.

It logically follows that if there is no resulting trust in the one-half undivided interest in undeveloped property conveyed by plaintiff to defendant, there would be no resulting trust in favor of plaintiff in the house erected on the property with funds borrowed by defendant, who has by plaintiff's own admission, made all of the monthly payments on this indebtedness since the construction of the house.

Accordingly, the judgment of the trial court is reversed. Plaintiff's suit is dismissed. Costs in this cause on appeal are taxed to plaintiff, for which execution may issue if necessary.

HIGHERS and FARMER, JJ., concur.