IN THE COURT OF APPEALS OF TENNESSEE

FILED

April 29, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| THE COPPER CELLAR CORPORATION, | ) | C/A NO. 03A01-9607-CV-00239 |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| | ) | |
| | ) | APPEAL AS OF RIGHT FROM THE |
| v. | ) | KNOX COUNTY CIRCUIT COURT |
| | ) | |
| | ) | |
| | ) | |
| JOHN F. MILLER, | ) | |
| | ) | HONORABLE WHEELER A. ROSENBALM, |
| Defendant-Appellee. | ) | JUDGE |

For Appellant                              For Appellee

DUDLEY W. TAYLOR                           EDWIN L. TREADWAY
DAVID H. JONES                             MARK S. DESSAUER
The Taylor Law Firm                        Hunter, Smith & Davis
Knoxville, Tennessee                       Kingsport, Tennessee

O P I N I O N

AFFIRMED AND REMANDED                                      Susano, J.

The Copper Cellar Corporation (Copper Cellar)[1] sued John F. Miller (Miller)[2] to recover the proceeds from a $550,000 cashier's check that Copper Cellar had originally delivered to a financial advisor, Joseph C. Taylor (Taylor), for investment purposes. Rather than investing the corporation's funds, and unbeknownst to Copper Cellar, Taylor negotiated the check, which was payable to Taylor's company, to Miller. The trial court granted Miller summary judgment, rejecting Copper Cellar's theories of recovery against him. The corporation appealed, raising various issues. We affirm.

## I.  *Facts*

The material facts are undisputed.[3] Between August, 1994, and November, 1995, Miller made numerous investments through Taylor. One transaction took place on October 11, 1995, when Miller gave Taylor $2,000,000 to purchase bonds that were, according to Taylor, scheduled to mature eight days later. In subsequent meetings, Taylor informed Miller that there would be a delay in securing the proceeds from the sale of the bonds. Taylor finally promised that he would pay Miller $2,000,000 on November 2.

---

[1]This suit was filed by Copper Cellar and a second plaintiff, Kenneth R. Davis. Davis initially appealed the trial court's adverse decision as to him, but later dismissed his appeal.

[2]The estate of Joseph C. Taylor was originally named as a defendant. The plaintiffs subsequently took a voluntary non-suit as to the estate.

[3]Copper Cellar argues in its reply brief that there are disputed facts making summary judgment inappropriate. It relies upon the affidavit of its president, Mr. Chase. We disagree. In reaching our conclusions in this case, we have assumed that all of the factual statements in Mr. Chase's affidavit are true.

2

In the meantime, Taylor spoke with Michael D. Chase (Chase), President of Copper Cellar, and recommended that the corporation purchase some stock options. Chase agreed to purchase the stock options and delivered to Taylor a cashier's check in the amount of $550,000. The cashier's check reflects Copper Cellar as the remitter and is payable to "Taylor and Associates."

On November 2, 1995, Taylor delivered eighteen cashier's checks, including the one from Copper Cellar, to Miller, ostensibly in payment of the bond investment and other debts. In his deposition, Miller testified that Taylor explained that the cashier's checks were "cash", and that Taylor needed only to endorse them to transfer that "cash" to Miller. Taylor then endorsed the checks, and Miller deposited some of the checks, including the cashier's check from Copper Cellar, in his savings account.

At the time of these transactions, Miller had never been involved in any business or other dealings with Copper Cellar or Mr. Chase. Miller and Chase did not know each other. In his affidavit, Miller states that he was unaware of any investment relationship between Copper Cellar and Taylor.

Taylor committed suicide on November 3, 1995. Copper Cellar, not having received its stock options, shortly thereafter filed suit against Miller, seeking to recover its $550,000, as well as treble damages for Miller's alleged inducement of breach of Copper Cellar's contract with Taylor. After the trial court

3

granted Miller summary judgment, Copper Cellar appealed, advancing the following theories of recovery: fraud and conspiracy to defraud; conversion; unjust enrichment; constructive trust; resulting trust; inducement to breach contract; and liability under T.C.A. § 35-2-104.

## II. *Elkins v. Miller*

The facts in this case are similar to the facts in the recently-decided case of **Elkins v. Miller**, C/A No. 03A01-9607-CV-00227, 1996 WL 599704 (Tenn. App., E.S., filed October 21, 1996, Inman, Sr. J.), *perm. app. denied by Supreme Court*. In that case, the plaintiff Harold E. Elkins sued the same defendant, Miller, under similar theories, seeking to recover an amount he had remitted to Taylor in the form of three cashier's checks. As in the instant case, the cashier's checks at issue were obtained by Taylor for the stated purpose of investing the money on behalf of Elkins, but were instead delivered over to Miller.

The plaintiff in **Elkins** sought recovery on the theories of, among other things, conversion, unjust enrichment, and constructive trust. As in the instant case, Miller's motion for summary judgment in the **Elkins** case was granted. The only significant factual difference between the two cases is that the cashier's checks in the **Elkins** case were payable directly to Miller, while in the instant case the cashier's check was payable to Taylor's company.

III.  *Standard of Review*


We review the trial court's grant of summary judgment against the standard of Rule 56.03, Tenn.R.Civ.P., which provides that summary judgment is appropriate where

> the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Since the material facts are not in dispute, our review only involves a question of law, and therefore no presumption of correctness attaches to the trial court's judgment.  **Gonzales v. Alman Constr. Co.**, 857 S.W.2d 42, 44 (Tenn. App. 1993).


In view of the striking similarities between the instant case and **Elkins**, we find that Copper Cellar's theories of recovery common to both cases are controlled by **Elkins**. Accordingly, we hold, based on **Elkins**, that the trial judge was correct in granting Miller summary judgment as to Copper Cellar's theories of conversion, unjust enrichment, and constructive trust.  These three theories were advanced by the plaintiff in **Elkins** and rejected by the holding in that case.


Copper Cellar's remaining theories of recovery were not addressed in **Elkins**.  We will discuss each in turn.

5

IV. *Fraud and Conspiracy to Defraud*

Copper Cellar contends the facts show that Miller is guilty of fraud or conspiracy to defraud. It insists that, because of the designation of Copper Cellar as remitter, and the fact that Miller was aware that Taylor was in the investment business, Miller either knew or should have known that Copper Cellar had furnished the cashier's check to Taylor for investment purposes only. Copper Cellar argues that this "uncontroverted evidence" establishes that Miller knowingly participated in Taylor's fraudulent activity.

The elements of fraud are: 1) an intentional misrepresentation as to a material fact; 2) knowledge of the representation's falsity; 3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and 4) that the misrepresentation relates to an existing or past fact. *Oak Ridge Precision Indus. v. First Tennessee Bank*, 835 S.W.2d 25, 29 (Tenn. App. 1992); *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. App. 1990). A conspiracy by two or more persons to defraud

> means a common purpose, supported by a concerted action to defraud, that each has the intent to do it, and that it is common to each of them, and that each has the understanding that the other has that purpose.

*Dale v. Thomas H. Temple Co.,* 208 S.W.2d 344, 353-54 (Tenn. 1948).

6

We believe that the facts before us suggest neither fraud nor conspiracy to defraud on the part of Miller. It is clear that Miller made no representations, false or otherwise, to Copper Cellar. *Oak Ridge*, 835 S.W.2d at 29; *Stacks*, 812 S.W.2d at 592. Furthermore, there is no proof of any "common purpose" or "concerted action to defraud" involving Miller and Taylor. *Dale*, 208 S.W.2d at 353-54. In short, there is no evidence to allow even an inference of fraudulent intent on the part of Miller. *Id.*

The fact that Miller knew that Taylor was in the business of investing other people's money does not charge him with knowledge of the nature of every transaction conducted by Taylor. By the same token, the designation of Copper Cellar as remitter on the cashier's check is of little consequence. Taylor told Miller that the cashier's checks, including the one from Copper Cellar, were "cash" that belonged to Taylor, and that once Taylor endorsed the checks, they would be Miller's. None of the checks reflect that Taylor's right to the funds was conditional or otherwise restricted. Copper Cellar, as the remitter, certainly had the wherewithal to indicate on the face of the instrument any desired restrictions on its negotiability. It made no such effort. For all that Miller knew, the Copper Cellar check simply represented payment due Taylor in his individual right. Miller had no knowledge, or reason to know, that Taylor could not dispose of that "cash" as he saw fit.

Copper Cellar relies on the case of *Dale v. Thomas H. Temple Co.*, 208 S.W.2d 344 (Tenn. 1948). We do not find *Dale*

7

applicable. In that case, the court found that a preponderance of the evidence "disclosed a knowing and intentional participation" of the alleged co-conspirators with those who perpetrated the actionable fraud. *Id*. at 353. In the instant case, there is no evidence or reasonable inferences from proven facts to indicate that Miller was aware of Taylor's fraudulent investment activities. We do not agree with Copper Cellar's assertion that it is a reasonable inference from the proof "that the money . . . Taylor remitted to [Miller] by virtue of the 18 cashier's checks, was money that . . . Taylor diverted from other individuals." As pertinent to this case, Taylor gave Miller a cashier's check that was payable, without condition or restriction, to Taylor. There was nothing about the check to indicate that the funds represented by it did not belong absolutely to the payee, Taylor. The fact that an individual handles investments for others does not mean that he or she cannot possess his or her own funds. Handling money for others and participating in investments or "deals" for one's own account are not mutually exclusive concepts.

Given the foregoing, we find that Miller was entitled to summary judgment as to Copper Cellar's theories of fraud or conspiracy to defraud.

V. *Resulting Trust*

Copper Cellar next contends that a resulting trust should be imposed for its benefit on the $550,000 in Miller's possession. A resulting trust is a judge-formulated means by

8

which the court may "reach an interest in property belonging to one person yet titled in and held by another." **Wells v. Wells**, 556 S.W.2d 769, 771 (Tenn. App. 1977). This court has cited with approval the definition of a resulting trust found in Gibson's Suits in Chancery, § 382 (Inman, 7th ed. 1988):

> Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called *presumptive* trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called *resulting* trusts, because the trust is the result which Equity attaches to the particular transaction.

*Id.* (Emphasis in original). *See* **Estate of Wardell ex rel. Wardell v. Dailey**, 674 S.W.2d 293, 295 (Tenn. App. 1983).

Proof of a resulting trust must be "clear, cogent and convincing." **Bowman v. Bowman**, 836 S.W.2d 563, 570 (Tenn. App. 1991)(quoting **Sanderson v. Milligan**, 585 S.W.2d 573, 574 (Tenn. 1979)); *see also,* **Estate of Wardell**, 674 S.W.2d at 295 ("[a resulting trust] must be sustained by proof of the clearest and most convincing character.").

Copper Cellar relies primarily on the case of **Sliger v. Sliger**, 105 S.W.2d 117 (Tenn. App. 1937). In that case, a borrower violated his agreement with a bank by loaning part of the loan proceeds to a third party who had earlier been refused a loan by the same bank. The court imposed "a constructive or

9

resulting trust" on a mortgage that the third party had made to the borrower as security for the unauthorized loan. *Id.* at 120.

Copper Cellar insists that, as in the *Sliger* case, a resulting trust should be imposed on the funds in question. We do not agree. The trust in *Sliger* was imposed on a mortgage that was executed by the third party to the defendant in that case. In other words, the mortgage existed for the benefit of the defendant, who had violated his loan agreement. We view these circumstances as very different from those in the instant case. Specifically, the funds on which Copper Cellar seeks to impose a resulting trust were transferred to a third party, Miller. Once Taylor negotiated the cashier's check to Miller, the former lost ownership interest in those funds. In contrast, the borrower in the *Sliger* case, as mortgagee, continued to own an interest in the wrongly-obtained funds, upon which the court imposed a trust. Therefore, by imposing a trust on the mortgage, the court reached an interest still owned by the guilty party. In the instant case, Copper Cellar would have the court impose a resulting trust on funds that no longer belong to Taylor, the perpetrator of the fraud. Because of this distinction, we believe that *Sliger* does not control the result in the instant case.

Furthermore, resulting trusts are generally imposed only "in accordance with the actual or assumed intention of the parties." *Burleson v. McCrary*, 753 S.W.2d 349, 352-53 (Tenn. 1988). Nothing in the record indicates that the parties intended to create any kind of trust. It appears that Miller had no intention other than to recover his investment and other funds

10

that Taylor owed him.  We therefore hold that this case does not involve the proper circumstances for the imposition of a resulting trust.

## VI.  *Inducement to Breach Contract*

As a third theory of recovery, Copper Cellar argues that Miller's actions constitute an unlawful inducement to breach contract under T.C.A. § 47-50-109, which provides as follows:

> It is unlawful for any person, by inducement, persuasion, misrepresentation, or other means, to induce or procure the breach or violation, refusal or failure to perform any lawful contract by any party thereto; and, in every case where a breach or violation of such contract is so procured, the person so procuring or inducing the same shall be liable in treble the amount of damages resulting from or incident to the breach of the contract.  The party injured by such breach may bring suit for the breach and for such damages.

Copper Cellar argues that an agency relationship, and therefore a contract, existed between it and Taylor, and that Miller knowingly induced a breach of that contract by accepting the cashier's check from Taylor.

The elements of a cause of action for inducement to breach a contract are: 1) that there was a legal contract; 2) that the wrongdoer had sufficient knowledge of the contract; 3) that the wrongdoer intended to induce its breach; 4) that the wrongdoer acted maliciously; 5) that the contract was breached; 6) that the act complained of was the proximate cause of the

11

breach; and 7) that damages resulted from the breach. ***Campbell v. Matlock***, 749 S.W.2d 748, 751 (Tenn. App. 1987); ***TSC Industries v. Tomlin***, 743 S.W.2d 169, 173 (Tenn. App. 1987).

Even assuming the existence of a contract between Copper Cellar and Taylor, there is no evidence of several of the other necessary elements. As stated earlier, Miller was unaware of any investment relationship between Copper Cellar and Taylor. The mere designation of Copper Cellar as the remitter of the cashier's check is insufficient to establish such knowledge. Furthermore, there is absolutely no evidence of malice or of any intent on the part of Miller to induce a breach of contract. Again, it seems clear that Miller was simply attempting to recover money that he had invested with Taylor. Thus, Copper Cellar's claim of inducement to breach its contract fails as a matter of law, and we hold that the trial court properly granted Miller summary judgment as to that theory.

## VII. *T.C.A. § 35-2-104*

Finally, Copper Cellar contends that Miller is liable to it under T.C.A. § 35-2-104, which provides:

> If any negotiable instrument payable or endorsed to a fiduciary *as such* is endorsed by the fiduciary, or if any negotiable instrument payable or endorsed to the principal is endorsed by a fiduciary empowered to endorse such instrument on behalf of the principal, the endorsee is not bound to inquire whether the fiduciary is committing a breach of the fiduciary's obligation as fiduciary in endorsing or delivering the instrument, and is not chargeable with notice that the fiduciary is

12

> committing a breach of the obligation as
> fiduciary unless the endorsee takes the
> instrument with actual knowledge of such
> breach or with knowledge of such facts that
> the action in taking the instrument amounts
> to bad faith.  If, however, such instrument
> is transferred by the fiduciary in payment of
> or as security for a personal debt of the
> fiduciary to the actual knowledge of the
> creditor, or is transferred in any
> transaction known by the transferee to be for
> the personal benefit of the fiduciary, the
> creditor or other transferee is liable to the
> principal if the fiduciary in fact commits a
> breach of the obligation as fiduciary in
> transferring the instrument.

(Emphasis added).

We acknowledge that the cashier's check in this case constitutes a negotiable instrument that was payable to Taylor, Copper Cellar's fiduciary.  However, T.C.A. § 35-2-104 only applies to negotiable instruments "payable or endorsed to a fiduciary *as such*."  *Id.*  (emphasis added)  The cashier's check at issue here was made payable simply to "Taylor and Associates". It contained no reference to Taylor's or Taylor and Associates' status as a fiduciary of Copper Cellar.  Thus, T.C.A. § 35-2-104 is not applicable to the facts of this case, and Copper Cellar's claim under that provision is without merit.

## VIII.  *Conclusion*

For the foregoing reasons, we hold that the trial court properly granted summary judgment to Miller as to Copper Cellar's theories of fraud, conspiracy to defraud, resulting trust, inducement to breach contract, and liability under T.C.A. § 35-2-104.  The remaining theories advanced by Copper Cellar are

13

controlled by our decision in **Elkins**.  We find that Miller was entitled to judgment as a matter of law under the standard of Rule 56.03, Tenn.R.Civ.P.  The judgment of the trial court is therefore affirmed.  Costs on appeal are assessed to the appellant and its surety.  This case is remanded to the trial court for collection of costs assessed there, pursuant to applicable law.

_____
Charles D. Susano, Jr., J.

CONCUR:


_____
Houston M. Goddard, P.J.


_____
Don T. McMurray, J.