IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
January 9, 2002 Session

## OSCAR LITTLE, ET AL. v. SAMUEL WATSON, ET AL.

**Appeal from the Circuit Court for Montgomery County**
**No. C13-843      James E. Walton, Judge**

—————————————

**No. M2001-00230-COA-R3-CV - Filed November 6, 2002**

—————————————

Samuel and Marguerite Watson appeal the final judgment of the trial court which found that a transaction between the Watsons and the Littles involving the purchase of a house created a resulting trust. The trial court divested out of the Watsons and vested in the Littles all interest in the house after the Littles obtained new financing for the house and paid off the previous mortgage in the Watsons' name and repaid the down payment with interest. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed and Remanded**

PATRICIA J. COTTRELL, J., delivered the opinion of the court, in which BEN H. CANTRELL, P.J., M.S., and DON R. ASH, SP. J., joined.

John T. Maher, Clarksville, Tennessee, for the appellants, Samuel Watson and Marguerite Watson.

Edward Robertson, Clarksville, Tennessee, for the appellees, Oscar Little and Helen Little.

**OPINION**

I. Facts

Oscar and Helen Little and Samuel and Marguerite Watson dispute the ownership of real property located at 312 Edmonson Ferry Road in Clarksville, Tennessee ("House"). The only testimony in the record is a Statement of the Evidence, filed by the Watsons, pursuant to Tenn. R. App. P. 24(c). According to that statement, Mrs. Little testified that her sister, Mrs. Watson, had asked the Littles to move to Clarksville so the families could be close together. Mrs. Watson testified as to other reasons for the move.

Mrs. Little testified that the Littles found a house in Clarksville they wanted to purchase, the House, but could not obtain financing for it because they had recently filed for bankruptcy. She also testified that it was agreed that the Watsons would purchase the House and the Littles would live

there and make the payments on the House. The Watsons did not disagree as to their reason for purchasing the House. Mrs. Watson testified that she and her husband decided to purchase the House after the Littles decided to move to Clarksville and were unable to obtain financing for the House. She stated that she and her husband had purchased the House for her sister to use because they were trying to help out family. Mr. Watson testified that he and his wife bought the House for the Littles to live in. He also stated that he had allowed the Littles to live in the House for the cost of the mortgage and insurance because they were family.

Mr. and Mrs. Watson purchased the House in September of 1989 using Mr. Watson's VA eligibility. They made the financing arrangements and paid the down payment and closing costs, totaling about $3,000. Both Watsons testified that shortly after the purchase they orally offered to let the Littles purchase the home from them by securing their own financing. Mrs. Little testified that neither she nor her husband had attempted to secure financing to purchase the home.[1]

The Littles paid all the mortgage payments and the insurance. Mrs. Watson testified that she had Mrs. Little pay the mortgage directly to the mortgage company by sending the statements to Mrs. Little as they came in; she also had Mrs. Little pay the insurance on the House. Mrs. Little testified that she believed she and her husband had repaid the down payment and costs to the Watsons, but had no proof documenting those payments. Mrs. Watson testified that the Littles had not repaid any of the down payment or closing costs.

Mr. Watson testified that the Watsons had paid for and done the work on repairs to the House. Mrs. Little testified that the Watsons had done some repairs around the home, but that she and Mr. Little had made improvements, including a concrete patio.

Approximately nine (9) years after the Littles moved in, the Watsons gave a lease to Mrs. Little to sign "to protect their interest in the House."[2] Mrs. Little testified that she remembered signing the lease but that she did not remember reading it, but Mrs. Watson testified Mrs. Little read the lease.

The Littles lived in the House and made the payments continuously since its purchase in 1989. They brought this suit because they thought that the Watsons had placed the House on the market for sale and indicated they were going to keep any profit from the sale. Mrs. Little testified that she and her husband were retired and would be financially unable to move out of the House. Mrs. Little estimated the value of the House at approximately $54,000, and estimated that approximately $31,000 was owed on the mortgage. Mr. Watson testified that neither he nor his wife had ever asked the Littles to leave and that the House was not on the market prior to the filing of this lawsuit.

[1]Mr. Little was unable to testify because of a serious illness.

[2]Mrs. Watson testified they found drugs in the House. Mrs. Little testified the police had been to the House upon occasion looking for the Littles' son, who was alleged to be involved in drugs.

The trial judge, after hearing the testimony of the witnesses, found that the House was titled in the Watsons but that they bought the House for the benefit of the Littles and that the Littles had paid all mortgage payments on the property. Therefore, the court found, a resulting trust was created, subject however to the condition that the Littles were to refinance the property so as to release the Watsons from liability under the mortgage. Further, the court found that there was a conflict in the testimony regarding repayment of the $3,000 down payment which all parties agreed was to be paid. The court resolved that conflict in favor of the Watsons by holding that the Littles must repay that amount plus interest. The court further ordered that if the Littles obtained financing for the House and repaid the down payment with interest within ninety (90) days, "the court will find that the conditions of the resulting trust have been satisfied and the property will be decreed to be theirs."

One month after the entry of the order the Littles submitted to the court proof that they had obtained new financing, paid off the mortgage that was in the Watsons' name, and paid the Watsons $4,658.25, which represented the $3,000 down payment plus interest. The court then entered a final judgment for the Littles ordering that "[a]ll right, title and interest of Samuel Watson and Wife, Marguerite Watson in the realty . . . is divested out of them and vested in Oscar Little and Wife, Helen Little, in fee simple as tenants by the entirety."

The Watsons appeal that final judgment to this court.

## II. Resulting Trusts

The issue presented in this case is whether the trial court erred in holding that the transaction between the parties herein created a resulting trust. Resulting trusts are a tool of equity available to courts to prevent a failure of justice. *Estate of Wardell ex rel. Wardell v. Daily*, 674 S.W.2d 293, 295 (Tenn. Ct. App. 1983) (quoting *Wells v. Wells*, 556 S.W.2d 769, 771 (Tenn. Ct. App. 1977)). Such trusts "enable a court, without violating all rules of logic, to reach an interest in property belonging to one person yet titled in and held by another." *Id.* This court has often cited and applied the definition of a resulting trust found in GIBSON'S SUITS IN CHANCERY §382 (Inman, 7th ed. 1988):

> Resulting trusts are those which arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. These trusts are sometimes called presumptive trusts, because the law presumes them to be intended by the parties from the nature and character of their transactions. They are, however, generally called resulting trusts, because the trust is the result which Equity attaches to the particular transaction.

*Smalling v. Terrell*, 943 S.W.2d 397, 400 (Tenn. Ct. App. 1996); *Estate of Wardell ex rel. Wardell*, 674 S.W.2d at 295.

The Tennessee Supreme Court has adopted the following as a comprehensive statement regarding the creation and application of resulting trusts:

-3-

The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

*In re Estate of Nichols v. Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) (quoting 76 AM. JUR. 2d *Trusts* § 166 at 197-98 (1992)).

Resulting trusts can be and generally are proved by parol evidence. *Latshaw v. Latshaw*, 787 S.W.2d 9, 11 (Tenn. Ct. App. 1989); *Estate of Wardell*, 674 S.W.2d at 295. However, to sustain a resulting trust based on parol evidence, it is necessary to overcome the combined weight of the opposing evidence and the presumption in favor of a written instrument which reflects legal title in another. To succeed, the evidence in favor of the resulting trust must be clear, cogent and convincing. *Rowlett v. Guthrie*, 867 S.W.2d 732, 735 (Tenn. Ct. App. 1993); *Latshaw*, 787 S.W.2d at 11; *Estate of Wardell*, 674 S.W.2d at 295. The clear, cogent and convincing evidence rule is an intermediate standard of proof lying between the preponderance and the reasonable doubt standards. *Estate of Acuff v. O'Linger*, 56 S.W.3d 527, 534 (Tenn. Ct. App. 2001). Under that standard, the party with the burden of proof must persuade the factfinder that his factual contentions are "highly probable." *Id.* at 537. On appeal, this court must determine *de novo* whether the Littles have proved their case by clear, cogent and convincing evidence. *Id.*[3]

### III. Requisite Elements and the Proof

The resulting trust found by the court herein rests upon the payment of consideration for the property. That is, the Littles paid the mortgage and insurance with the understanding and expectation of at least a beneficial interest in the House. In such situations, if a resulting trust arises, it does so from the fact of payment of consideration, and not from any agreement of the parties. *Livesay v. Keaton*, 611 S.W.2d 581, 584 (Tenn. Ct. App. 1980) (citing *Greene v. Greene*, 272 S.W.2d 483, 487 (Tenn. Ct. App. 1954)). With regard to those trusts arising from transactions involving payment of consideration by one party with title going to the other, the purpose of resulting trusts has been explained as follows:

---

[3]The trial court did not make a specific finding that the elements were proved by clear and convincing evidence. Whether or not the trial court stated that it found the evidence supporting its ruling to be clear and convincing, an appellate court's role is to review the evidence and make that determination. *Vineyard v. Betty*, No. M2001-00642-R3-CV, 2002 Tenn. App. LEXIS 301, at *6 (Tenn. Ct. App. Apr. 30, 2002) (no Tenn. R. App. P. 11 application filed).

It is said that the source and underlying principle of all resulting trusts is the equitable theory of consideration. That theory is that the payment of a valuable consideration draws to it the beneficial ownership; that a trust follows or goes with the real consideration, or results to him from whom the consideration actually comes; that the owner of the money that pays for the property should be the owner of the property. Pomeroy's Eq. Jur. (5th ed), secs. 981, 1031, 1037; 2 Lawrence on Eq. Jur. (1929 ed.), sec. 565.

*Smalling,* 943 S.W.2d at 400; *Livesay*, 611 S.W.2d at 584*; Greene*, 272 S.W.2d at 487.

As a general principle, a resulting trust upon land must arise at the time of the purchase, attach to the title at that time, and not arise out of any subsequent contract or transaction. *Smalling*, 943 S.W.2d at 400 (citing *Livesay*, 611 S.W.2d at 584); *Rowlett*, 867 S.W.2d at 735. Consequently, it has been held that the beneficiary of a resulting trust must have actually made payment, or incurred an absolute obligation to pay, as part of the original transaction of the purchase of the property. *Rowlett*, 867 S.W.2d at 735; *Livesay*, 611 S.W.2d at 584.

An examination of the application of this rule is helpful. In *Greene*, for example, we held that an agreement between a brother who was the titled owner of a farm, and his sister who lived on the farm with him, kept house and worked on the farm, did not create a resulting trust in the sister's favor because: (1) some tracts included in the farm were inherited by the brother, and thus the sister could claim no equitable interest therein; (2) the sister had deeded her interest in the original family tract to her brother and could not claim a trust resulting from that conveyance in contravention to the deed which stated the transfer was made for valuable consideration; and (3) although she testified that she and her brother had an agreement to live and work together and acquire properties and that she carried out that agreement by contributing work, services, and money, there was no proof as to the cost of the realty and personalty acquired and no proof as to the value of her contributions. Thus, the court determined that she failed to meet her burden to prove the elements of a resulting trust by failing to offer any proof of the proportional amounts of her contributions to the consideration paid for the property. *Greene*, 272 S.W.2d at 487.

In *Smalling*, this court found that the proof did not support the imposition of a resulting trust because the testimony of the potential beneficiary was inconsistent with any intention or expectation that she receive a beneficial interest in real property in return for various mortgage payments she made on that property, which was owned by her sister. *Smalling*, 943 S.W.2d at 397. She started making payments nine years after her sister purchased the property at issue because her sister needed financial help. *Id*.

On appeal, the Watsons assert that no resulting trust existed because the Littles did not make any payment toward the House at the time it was purchased; the Watsons paid the down payment and closing costs. We think, however, the critical inquiry is whether the House was purchased by the Watsons for the Littles with the understanding, at the time of the purchase, that the Littles would pay for the House. It is undisputed that the Littles made all mortgage and insurance payments from the

beginning, and we do not believe the fact they did not pay the down payment is fatal to the finding of a resulting trust.

We reach this conclusion for several reasons. First, the fundamental question is whether the party claiming the beneficial interest actually paid consideration for that interest. A trust results to the party actually paying the consideration on the theory that the party paying for the property should be the owner of the property. *Greene*, 272 S.W.2d at 487. Where payment of consideration for the purchase of the property is clear, the inquiry becomes whether that payment was made under circumstances indicating an equitable interest. Payment of the consideration for property actually creates a presumption that the payor has a beneficial interest.

> . . . the theory of resulting trust being founded upon a natural equity that one who pays for the property should enjoy it, unless he intended by the vesting of title to confer a beneficial interest upon the grantee, as a rule a resulting trust arises by operation of law where one person furnishes the consideration for property and the title is taken in another - at least upon adequate proof that the consideration has been furnished. . . . Stated otherwise, a resulting trust ordinarily will be presumed in favor of one who provides purchase money for land taken in the name of another.
>
> . . . .
>
> . . . in imposing a resulting trust, the court presumes, absent contrary evidence, that the person supplying the purchase money for the property intends that its purchase will inure to his benefit, and the fact that title is in the name of another is for some incidental reason.

76 AM. JUR. 2d *Trusts* § 179 at 208-09 (1992) and § 169 at 203 (1992).

Secondly, our Supreme Court has adopted the position that resulting trusts, being a court-made equitable remedy, are to be implied from the acts and conduct of the parties and the circumstances which exist at the time of and surround the transaction from which the trust arises and:

> While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another - sometimes referred to as a 'purchase-money' resulting trust - they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust - on an inquiry into the consideration of a transaction - in order to prevent a failure of justice. . . .

*In re Estate of Nichols*, 856 S.W.2d at 401. Thus, the Court recognized that although a "purchase-money" resulting trust is one common example of the situation in which a resulting trust will be imposed, courts may impose resulting trusts in other situations where justice requires it "on inquiry into the consideration of a transaction." *Id.* In *Nichols*, the Supreme Court adopted part of a well-

known treatise as a "comprehensive statement regarding the creation and application of resulting trusts," *Id.*, and the same treatise offers further guidance on the issue at hand:

> Where consideration is required for the creation of a resulting trust, as for example, in the context of a purchase money resulting trust, such trust is created by virtue of the consideration advanced before or at the time the legal title passes, and not from consideration thereafter paid, unless occurring or advanced immediately thereafter so as to be in fact part of the same transaction. However, in this regard, there is no difference in principle between paying money toward the purchase price at the time of the delivery of a deed and contracting at that time to pay the same sum later and then paying it as promised, and in this regard the view has been set forth that the incurring of an obligation before or at the time of the conveyance is not a prerequisite for the imposition of a resulting trust.

76 AM. JUR. 2d *Trusts* § 168 at 200-01 (1992).

Thus, an obligation to pay undertaken at the time of transfer of title, accompanied by actual payment later, is sufficient to create a resulting trust based on consideration. This rationale is consistent with the basic principles underlying the equitable remedy of resulting trusts. It also recognizes the common situation where the purchase price is not paid all at once but instead is paid over time or through a mortgage. While some authorities would require that the requisite obligation be to the grantor or lender, we believe the better reasoning is that adopted by the Supreme Court of North Carolina in *Cline v. Cline*, 255 S.E.2d 399 (N.C. 1979), wherein that court stated:

> However, as *Bogert* points out, in a large number of cases the person claiming a resulting trust proves a payment on the purchase price made to the grantee or grantor after the delivery of the deed but pursuant to a promise made to the grantee before the deed was delivered. Although it seems that this Court has not considered the application of the resulting trust doctrine to this specific situation other jurisdictions have. *See Bogert*, § 456, n. 25, where the authorities are collected. In discussing the "large group of cases [in which] the person claiming a resulting trust proves payment after the delivery of the deed, pursuant to a promise made to the grantee . . . before delivery of the deed," *Bogert* offered the following example and comments:
>
> "A is bargaining for land to be bought from B, and A seeks the aid of C in financing the sale. It is agreed between A and C that A shall pay part of the price at the time of the delivery of the deed from B to A, and that A shall give a note and mortgage to B for the remainder of the purchase price; and C agrees with A that C will make payments to A in the future which A agrees to use to help him in meeting his obligations to B. Here C, the third party, does not promise the grantor, B, anything. The consideration received by the grantor for his deed consists of cash paid by the grantee, A, and a note and mortgage executed by the grantee, A, alone. C's promise to the grantee, A, is not to pay the purchase price, because technically one can pay

the purchase price only to the seller of the land. C's agreement with A is to make a payment to A which will enable A to pay the purchase price."

*Bogert*, § 456 at 673.

"If the promise of C has been performed by the making of the agreed payment to A, the grantee, after delivery of the deed to A, the authorities hold that C obtains a resulting trust arising at the date of C's payment, but relates back in effect to the time of the taking of title by the grantee, A." *Bogert* justifies this result in either of two ways: "(1) by a finding that C's promise to A and his performance of it are equivalent in practical effect to a payment of part of the price of the land at the time of the delivery of the deed; or (2) by an argument that even if C's conduct is something totally distinct from paying part of the purchase price to the grantor, there is ground for an inference or presumption of an agreement between the prospective grantee and C that C should have an equitable interest in the land corresponding to the amount of his payment to the grantee." *Id*. at 674. Certainly the logic of such an inference is as cogent in this situation as it is in that of the classic purchase-money resulting trust. There is no difference in principle between paying money toward the purchase price at the time of the delivery of a deed and contracting at that time to pay the same sum later and then paying it as promised. *See Id*. at 672, 673.

*Cline*, 255 S.E.2d at 405-06.

A similar result and logic was applied in *Novak v. Novak*, 57 Cal. Rptr 564 (Cal. Ct. App. 1967), wherein the court determined that a son's payment of part of the initial costs of purchasing a home in which his elderly father lived and made all the mortgage payments was a loan to the father and that the son was a trustee of his father's beneficial interest. The court held that the individual claiming a beneficial interest, in that case the father, need not have made an express promise to repay the loan; "his promise may be implied from the circumstances in which event the trustee of the resulting trust holds legal title merely as security for the repayment of the loan." *Id*. 57 Cal. Rptr. at 567.

The undisputed, and therefore clear and convincing, evidence herein is that the Littles made all mortgage and insurance payments on the House for ten years and made those payments directly to the mortgage and insurance companies. Thus, we conclude that the Littles paid consideration for the purchase of the House. It is also undisputed that the Watsons bought the House for the Littles to live in and solely because the Littles could not obtain financing at that time. The parties' conduct and the circumstances surrounding the purchase are consistent with an understanding that the Watsons purchased the House for the benefit of the Littles. Had the Littles been able to obtain financing in 1989, the House would have been bought by them and they would have made the same contribution to consideration for the House except for the down payment and closing costs. The parties' conduct for nine years after the purchase is consistent with an understanding that the Littles had a beneficial interest in the House.

Consequently, we find there was clear and convincing evidence regarding the circumstances of the transaction that entitle the Littles to a beneficial interest in the House. The Watsons were invested with legal title to the House under such circumstances that equity requires a finding that they held the property for the benefit of the Littles. A resulting trust was correctly found by the trial court.

## IV. Conclusion

For the reasons stated above, we affirm the judgment of the trial court finding a resulting trust and the final judgment transferring title to the Littles after the Watsons were repaid their initial costs with interest and refinancing was obtained. The costs of appeal are taxed to the appellants, Mr. and Mrs. Watson, for which execution may issue if necessary.

_____
PATRICIA J. COTTRELL, JUDGE