**In re ESTATE OF Ruby Lee NICHOLS, Deceased.**

**Carol NICHOLS, Plaintiff–Appellee,**

v.

**Jerald NICHOLS, Defendant–Appellant.**

Supreme Court of Tennessee,
at Knoxville.

June 1, 1993.

Tom H. Rogan, Rogersville, for plaintiff-appellee.

Sharon Frankenberg, Ingram & Lowe, Knoxville, for defendant-appellant.

## OPINION

REID, Chief Justice.

This case presents an appeal from an adjudication by the trial court, affirmed by the Court of Appeals, that certain certificates of deposit, issued to the decedent, Ruby Lee Nichols, and her only child, Jerald Nichols, as joint tenants with rights of survivorship, be distributed according to the terms of the decedent's last will and testament rather than to the surviving tenant.

Prior to her death, the decedent purchased or renewed seven certificates of deposit in the total amount of approximately $165,000. The last certificate was purchased on February 17, 1989, less than one month prior to the decedent's death on March 7, 1989. The others were purchased or renewed prior to January 1, 1989, the effective date of T.C.A. § 45–2–703(c)–(g) (Supp.1992), and four of the certificates were issued prior to the date on which the decedent executed her last will and testament, May 12, 1985. The funds to purchase the certificates were furnished by the decedent. The certificates were issued to the decedent and Jerald Nichols "as joint tenants with rights of survivorship and not as tenants in common and not as tenants by the entirety." Both parties signed the signature cards, which contained the terms of the deposit agreement.

The decedent was survived by Jerald Nichols (the defendant-appellant) and his two children, Carol Nichols (who is now Carol Nichols Blanton, the plaintiff-appellee) and Chad Nichols. To these three persons she willed "all [her] property, real and personal." She appointed Jerald Nichols executor of her estate.

The evidence includes the signature cards, the certificates of deposit, and the testimonies of Carol Nichols, Jerald Nichols, and the lawyer who prepared the decedent's last will and testament. According to the narrative transcript of the hearing, found by the trial court to be more nearly accurate than the other account submitted, the attorney who prepared decedent's will testified, apparently without objection, as follows:

I prepared a will for Ruby Lee Nichols at her home. I talked with her about what she had, talked with her about some CD's. She told me she had certificates of deposit with her name and her son Jerald's name on the certificates of deposit. She told me what she wanted in her will, that her estate was to be divided equally among her son, Jerald, and her two grandchildren, Carol and Chad. She told me that she wanted her estate to be divided equally between the three. I told her that the certificates of deposit were

held between her and her son, that the survivor of them would get the certificates of deposit. Ruby was strong willed. She said she had instructed Jerald as to what he was to do with the certificates of deposit, that they were all to be divided equally between him and the two grandchildren. I told her that was not the law. She said I trust Jerald to do it.

And, further:

[S]he said her son agreed to what she had told him, agreed that he would divide the certificates of deposit equally.

Appellant Jerald Nichols testified that after the death of his mother, he appropriated the certificates for his personal control, and he also testified regarding his acts as executor of the estate. He was not asked any questions regarding the issuance of the certificates of deposit.

Carol Nichols filed an exception to the inventory of the estate on the ground that the inventory was incomplete because it did not include the certificates of deposit. The exception was amended to charge that Jerald Nichols was claiming the certificates as his property "in violation of his fiduciary relationship, by virtue of fraud and misrepresentation committed by him in an attempt to prevent passing of title to the estate."

The trial court specifically found that there was no fraud on the part of Jerald Nichols. The court also found

that the testatrix did not intend that these certificates would pass outside probate, but rather believed that they would pass according to the directives of her will; that the testatrix clearly communicated her intent to defendant and relied upon him to take whatever steps were necessary to accommodate her wishes.

There is no indication in the record when, with reference to the issuance of the several certificates of deposit, the stated conversations between the testatrix and her son occurred.

The court ordered that the inventory be amended to include the certificates of de-

posit, which the court found to be "properly includable within the estate."

In affirming the trial court, the Court of Appeals relied upon this Court's holding in *Lowry v. Lowry*, 541 S.W.2d 128 (Tenn. 1976), for the statement of the applicable rule of law:

> In *Lowry v. Lowry*, 541 S.W.2d 128 (Tenn.1976) the Supreme Court, adopting the "contract" theory as opposed to the "gift" theory, held that absent clear and convincing evidence of a contrary intent expressed at the time of its execution, a bank signature card containing clear and unambiguous language that a joint account with rights of survivorship is intended, creates a joint tenancy with the proceeds to pass to the survivor.

The court stated further:

> Here the certificates of deposit fall within that description, and thus it must be determined whether the evidence establishes clearly and convincingly that at the time of creation of the certificates of deposit the intent was expressed that the certificates pass, not to the survivor, Appellant, but to him and his two children equally.

The court then stated the issue to be whether the evidence is sufficient to establish that the intent was expressed at the time that the certificates of deposit were obtained. The court found that there was not any direct evidence on the issue in the record, but found that Jerald Nichols "[spoke] loudly by silence" when he did not volunteer information regarding the issuance of the several certificates of deposit. The court held that Jerald Nichols' silence was "circumstantial evidence" that he was told by the decedent of her intent each time a certificate of deposit was issued and that he agreed to divide the proceeds among his children and himself equally. The court stated that Carol Nichols was absolved from any responsibility to provide evidence of an intent contrary to that expressed on the face of the certificates. The court stated, "It is not to be said that Appellee was bound at her peril to question Appellant on a matter as to which he chose not to speak." The Court of Appeals affirmed the "findings and judgment" of the trial court.

■ Ownership of the certificate issued February 17, 1989, is controlled by the provisions of T.C.A. § 45–2–703(c)–(f) which, pursuant to subsection (g), became effective January 1, 1989. Pursuant to that statute:

> A designation of "joint tenants with right of survivorship," or substantially similar language, shall be *conclusive* evidence in any action or proceeding of the intentions of all named that title vests in the survivor.

T.C.A. § 45–2–703(e)(1) (emphasis added). As discussed below, the record supports no disposition of that certificate contrary to this statute.

The ownership of the other six certificates of deposit are controlled by the law as stated by this Court in *Lowry v. Lowry*. This case is similar to *Lowry*, in which two joint bank accounts with rights of survivorship had been opened with funds owned by the decedent. The first account was opened prior to the date on which the decedent executed her last will and testament, whereby she, without reference to the bank account, willed all her property to her five children equally. The second account was opened after the will had been executed. The Court rejected the theory that

> if the accounts were transferred to petitioner [surviving tenant] at all, they were transferred as a gift; and petitioner must affirmatively show that all of the formal requirements of a gift were complied with. That is, there must have been an intention to make a present gift coupled with delivery by which complete dominion and control of the property was surrendered by the donor.

*Lowry v. Lowry*, 541 S.W.2d at 130. The Court stated further:

> While we accept this as a proper statement of the law of gifts, we reject the argument that these requirements must be affirmatively proven by the survivor of a joint account in order that he may exercise his rights of survivorship under the terms of the agreement.

*Id.* The Court, instead, approved the decision by the Court of Appeals in *Iacometti v. Frassinelli*, 494 S.W.2d 496 (Tenn.App. 1973),

> in which the decedent died intestate with a joint survivorship account in existence. The question presented in that case was identical to the one presented in the case at bar: whether the funds passed at death to the survivor, or to the estate. The Court of Appeals rejected the idea that the survivor of a joint account with survivorship rights was required to go forward beyond the written agreement and affirmatively show by other proof that the funds placed in the account were intended as a gift. The Court stated that absent a finding of fraud, undue influence, or overreaching: "... the written agreement signed by the deceased speaks just as loudly and clearly as if the deceased herself took the stand and orally expressed the words written on the paper." *Id.* at 500.

*Lowry v. Lowry*, 541 S.W.2d at 131.

The Court held in *Lowry* that, "[a]bsent clear and convincing evidence of contrary intent expressed at the time of its execution, ... clear and unambiguous language" on a bank's signature card is sufficient proof of the joint account and the surviving tenant's ownership of the proceeds. *Id.* at 132. The Court further found that:

> The establishment of a joint bank account creating a joint tenancy with right of survivorship in clear and unambiguous language is subject to the parol evidence rule and is generally immune from attack in the absence of fraud, misrepresentation, duress, undue influence, mutual mistake, and incapacity.

*Id.* at 133. And further:

> Respondents have not met the burden of showing by clear and convincing evidence that the agreements as expressed in writing on the signature cards did not reflect the true intention of the parties at the time of execution.

*Id.*

That last statement is also applicable to the case before the Court. The language of the certificates creating the joint accounts with rights of survivorship is clear and unambiguous. There is no evidence of fraud or other circumstances that would vitiate the agreements. In fact, as found by the trial court, there was "no direct evidence" regarding the execution of the certificates. The Court of Appeals found, however, that Jerald Nichols' *silence* was circumstantial evidence sufficient to prove "that [the decedent] told her son Jerald to divide the certificates equally between himself and his two children," and affirmed the "findings and judgment" of the trial court.

The legal theory on which the decisions of the trial court and the Court of Appeals are based is not clear. The finding and judgment of the trial court, affirmed by the Court of Appeals, was that,

> such certificates represent funds actually owned by Ruby Lee Nichols, testatrix, which said certificates are properly includable within the estate.

The issue was presented in the trial court by Carol Nichols' exception to the inventory filed by Jerald Nichols as executor. The exception acknowledges that the funds were held in certificates of deposit issued to the decedent and Jerald Nichols as joint tenants with rights of survivorship. The exception charged only that the certificates were improperly omitted from the inventory of the estate. The exception was amended to allege fraud and misrepresentation; however, both the trial court and the Court of Appeals absolve Jerald Nichols of any fraudulent conduct.

A decision that the certificates constitute a part of the probate estate, and therefore are includable in the inventory, can only be based on a determination that there was no intent to create a joint account with rights of survivorship. *See* 2 *Pritchard on Wills and Administration of Estates* § 629, p. 151–52 (4th ed. 1983). The funds represented by the certificates are subject to probate only if they were owned by the decedent at the time of her death. They can be owned by the decedent at the time of her death only if there was no right of survivorship. *See id.* Since the language of the certificates in this case is clear and unambiguous, clear and convincing evi-

dence is required to show that the certificates do not reflect the intent of the parties at the times of execution. *See Lowry v. Lowry,* 541 S.W.2d at 132. Since there is no such proof, the trial court's finding that the property represented by the certificates are includable in the estate cannot be sustained.

Even though the Court of Appeals affirmed the findings of the trial court that the certificates are subject to probate, it relied upon the inconsistent legal theory that the disposition of the funds held jointly with rights of survivorship is subject to a trust created by agreement between the decedent, as the settlor, and the surviving tenant, as the trustee. That court stated that imposition of the trust upon the proceeds does not disturb the legal title in the surviving tenant, but is utilized as "a tool of equity to prevent failure of justice." The Court of Appeals based its decision in large measure on the holding in *Wardell v. Dailey,* 674 S.W.2d 293 (Tenn.App.1983), in which that court found that a trust was imposed on the funds held by the surviving tenant.

The statements regarding the purpose and characteristics of a resulting trust made in *Wardell v. Dailey,* have general application in many areas of the law. They have no special application to joint accounts. Perhaps a more comprehensive statement regarding the creation and application of resulting trusts is as follows:

The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has

been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another—sometimes referred to as a "purchase-money resulting trust"—they may also be imposed in other circumstances, such that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust—on an inquiry into the consideration of a transaction—in order to prevent a failure of justice. However, the particular circumstances under which a resulting trust may arise varies from jurisdiction to jurisdiction.

76 Am.Jur.2d *Trusts* § 166, pp. 197–98 (1992).

In *Wardell v. Dailey,* the defendant son of the deceased father testified that he was holding the proceeds received from certificates of deposit, issued to the decedent and himself with rights of survivorship, for the support of his father and mother prior to his father's death and then for the support of his mother. The surviving tenant testified that he was not claiming the certificates as his property. The court properly held, on the facts of that case, that a resulting trust had been created by the decedent.

However, the facts of the present case do not support the same conclusion. As previously stated, there is no evidence in the record regarding the issuance of the certificates of deposit other than the agreement contained on the certificates showing Jerald Nichols to be a joint tenant with the right of survivorship. Nevertheless, because Jerald Nichols did not testify regarding the issuance of the certificates, the Court of Appeals "invok[ed] an inference against [him] by reason of his testimonial omission." This "inference" is found by the Court of Appeals to complete the "clear and convincing" proof necessary under *Lowry,* to prevail over the written agreement.

■ The rule relied upon by the Court of Appeals was discussed by this Court in *Runnells v. Rogers*, 596 S.W.2d 87 (Tenn. 1980), a medical malpractice case decided for the plaintiff in a three to two decision. The majority held:

> There is an additional matter we find troubling. This is the fact that in the face of a prima facie case of negligence, the doctor declined to testify and failed to call witnesses. We fully recognize the general rule that a defendant in a civil case is not required to testify and has the right to rely upon the duty of the plaintiff to carry the burden of proof and to avail himself of the plaintiff's failure to make out a case.
>
> There is, however, another rule of law that we think applicable in this case. The Trial Judge charged the substance of the missing witness rule to indicate the unfavorable inferences arising from the unexplained failure of the defendant to produce evidence within his knowledge and control.
>
> Mr. Justice Lansden, in *Western Union Telegraph Co. v. Lamb*, 140 Tenn. 107, 203 S.W. 752 (1918), articulated the rule, as applied to the failure of a party defendant to testify, as follows:
>
>> [W]here the evidence tends to fix liability on the defendant, and if he has it in his power to offer evidence to rebut the unfavorable inferences which the proof tends to establish, and neglects or refuses to offer such proof, it may be inferred from the facts shown that the fully developed evidence would establish liability upon his part.
>>
>> 140 Tenn. at 111, 203 S.W. at 753.
>
> This rule applies, however, only "when the plaintiff's proof and the legal deduction therefrom make a *prima facie* case against the defendant." *Davis v. Newsome Auto Tire and Vulcanizing Co.*, 141 Tenn. 527, 529, 213 S.W. 914, 915 (1919). *See also, Dukes v. McGimsey*, 500 S.W.2d 448, 451 (Tenn.App.1973).

*Id.* at 90. The other side of the issue was presented in the dissent:

> While the majority find it "troubling" that the defendant doctor failed to testi-

fy, I find it much more troubling that the plaintiff did not call the defendant doctor as an adverse witness, which he could have done under the Rules of Civil Procedure without in any way making the defendant the plaintiff's witness or vouching for his credibility. *See* Rule 43.02.

*Id.* at 91. Carol Nichols has even less right to complain of Jerald Nichols' silence in the case before the Court, because Jerald Nichols was on the witness stand and Carol Nichols chose not to cross-examine him with regard to the issuance of the certificates of deposit. Contrary to the statement by the Court of Appeals, the burden to "develop the evidence" is on the plaintiff, not the defendant.

■ Be that as it may, the rule in the form most favorable to its invocation allows the inference only in cases in which the plaintiff has made a *prima facie* case of liability. The appellee in the case before the Court, had not made a *prima facie* case. To the contrary, there was no evidence in opposition to the clear and unambiguous written agreement that the decedent and her son held the accounts as joint tenants with rights of survivorship. Consequently, the absent witness rule is not applicable in this case.

■ The creation of a resulting trust is not a means to avoid the law with regard to joint tenancies with rights of survivorship as established in *Lowry* or under T.C.A. § 45–2–703, as amended. Under compelling circumstances, the courts may impose a trust. The high standard of proof upon which a trust may be imposed is well stated in *Wardell v. Dailey:*

> "While an implied or resulting trust may be established by parol evidence, yet both upon reason and authority the courts will not enforce it, unless it be established by the most convincing and irrefragable evidence. In other words, it must be sustained by proof of the clearest and most convincing character. To sustain a resulting trust upon parol evidence in the teeth of the terms of the written instrument, it is not essential that the evidence be of a character to

remove all reasonable doubt, but only that it be so clear, cogent and convincing as to overcome the opposing evidence, coupled with the presumption that obtains in favor of the written instrument."

674 S.W.2d at 295 (quoting *Savage v. Savage,* 4 Tenn.App. 277, 285 (1927)).

The proof in this case does not rise to the level required to impose a resulting trust. Consequently, the equitable as well as the legal title remains in the appellant, Jerald Nichols.

The judgments of the Court of Appeals and the trial court are reversed, and the case is remanded for further proceedings.

The costs are taxed against the appellee, Carol Nichols.

DROWOTA, O'BRIEN, DAUGHTREY, and ANDERSON, JJ., concur.