IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON

In re ESTATE OF BESSIE B. HOLMES,     Shelby Law No. B-27529
DECEASED,                            C.A. No. 02A01-9707-PB-00158

JAIME H. MAUPIN,

    Claimant/Appellant,

Hon. Leonard D. Pierotti, Judge

v.

JOSEPH N. HOLMES,
CO-ADMINISTRATOR,

    Respondent/Appellee.

**FILED**

**March 26, 1998**

**Cecil Crowson, Jr.**
Appellate Court Clerk

LANCELOT L. MINOR, III, Bourland, Heflin, Alvarez & Minor, Memphis, Attorney for
Plaintiff/Appellant

CLIFFORD D. PIERCE, JR., Wyatt, Tarrant & Combs, Memphis, Attorney for
Defendant/Appellee.

*AFFIRMED*

Opinion filed:

**TOMLIN, Sr. J.**

    This appeal comes to this court from the Probate Court of Shelby County. Jaime H.
Maupin ("claimant") a co-administrator, filed a claim against the estate of Bessie B. Holmes
("estate"), in the amount of $7,173.43 to recover funeral expenses paid by her for the burial of
her mother, Bessie B. Holmes ("decedent"). Joseph N. Holmes ("respondent"), claimant's
brother, and also a co-administrator of the estate, filed an exception to this claim, contending that
the estate was not indebted to claimant for any amount. In addition, respondent also sought to
recover monies in excess of $30,000.00 which claimant had paid to herself from a joint bank
account she had with decedent with right of survivorship, created at a time when decedent was
mentally incapacitated. Respondent averred that the amount claimed for funeral expenses could
be deducted from the survivorship account. Claimant in turn filed a response to the exception,
contending that at the time the account was created, decedent possessed the required mental
capacity to create the account and that the funds in the joint account with right of survivorship
became hers upon the death of decedent.

    Following a bench trial, the court found that at the time the joint account was opened,
decedent did not have the mental capacity to create a joint account with right of survivorship. In

addition, the court found that decedent had been subject to undo influence by claimant and that the funds appropriated to her own use by claimant from the survivorship account belonged to decedent's estate. The court awarded claimant the amount of funeral expenses she expended on behalf of decedent. On appeal, the sole issue presented to this court is whether the trial court erred in finding that the funds in the joint account with right of survivorship belonged to the estate rather than to claimant. For the reasons hereinafter stated, we find no error and affirm.

While there are some hotly contested issues, many of the basic facts are not in dispute. Decedent, a resident of Shelby County, died intestate on March 31, 1996. She was ninety years old at the time of her death. Claimant and respondent were appointed as co-administratrix and co-administrator of decedent's estate. Decedent was diagnosed with Alzheimer's disease in December, 1995. On July 14, 1995, claimant and decedent opened a joint account with the right of survivorship at First Tennessee Bank in Memphis. The funds deposited into this account were transferred by claimant from an existing joint checking account with a right of survivorship that had been established earlier in the names of claimant and decedent at the same bank. Present at the opening of this new account were claimant, decedent, a bank official and Ms. Margaret Kinney, a sister of claimant and respondent, who had lived in the home of decedent for many years.

At the time that this account was opened, decedent could not handle her own affairs, but was able to sign checks prepared for her by either claimant or her other daughter, Ms. Kinney. At the time she was diagnosed in December, 1995 as having Alzheimer's decedent was unable to sign her own name. The bank's signature card used in the opening of the 1995 disputed account contained clear and unambiguous language to the effect that the account was a joint tenancy with a right of survivorship. We have already stated in the preamble to this opinion the events that transpired concerning these funds following the death of decedent. We will treat the remaining relevant facts, those that are controverted and those that are not, in the opinion hereafter as we discuss the relevant issues.

Before dealing with these issues, the court would like to clarify what law it considers to be applicable and what law it considers to be inapplicable. Claimant relies heavily upon some of the language of T.C.A. § 45-2-703(e)(1) (1993), wherein she contends that where there is language in a joint account card designating "joint tenant with right of survivorship" or language

2

similar thereto, as stated in subsection (e)(1) it "shall be <u>conclusive evidence</u> in any action or proceeding of the intentions of all named that title vests in the survivor." (emphasis supplied). We are of the opinion that claimant's reliance upon this statute is misplaced.

First of all, it has been held by the eastern section of this court that T.C.A. § 45-2-703 was initially enacted for the protection of the bank, absolving a bank of liability upon its payment to either joint tenant or the survivor. <u>See</u> <u>Leffew v. Mayes</u>, 685 S.W.2d 288, 291 (Tenn. Ct. App. 1984).

This code section was revisited by our supreme court in <u>In re Estate of Nichols</u>, 856 S.W.2d 397 (Tenn. 1993). In <u>Nichols</u> the court considered the ownership of seven certificates of deposit issued to joint tenants with right of survivorship. Six were issued prior to the effective date of § 45-2-703(c), a 1989 amendment, while one was issued after its effective date. In holding that the first six were to be construed in light of the law as established in <u>Lowry v. Lowry</u>, 541 S.W.2d 128 (Tenn. 1976), and one in accordance with the amendment to § 45-2-703, the court did not suggest that the word "conclusive" in the 1989 amendment foreclosed any and all attacks on the questions of intent and ownership. The supreme court noted that the <u>Lowry</u> court held that "[a]bsent clear and convincing evidence of contrary intent expressed at the time of its execution, . . . clear and unambiguous language" on a bank's signature card is sufficient proof of the joint account and the surviving tenant's ownership of the proceeds. <u>Lowry</u>, 541 S.W.2d at 132.

The <u>Nichols</u>' court further noted that <u>Lowry</u> also stood for the proposition that "[t]he establishment of a joint bank account creating a joint tenancy with right of survivorship in clear and unambiguous language is subject to the parol evidence rule and is generally immune from attack <u>in the absence of fraud, misrepresentation, duress, undue influence, mutual mistake, and incapacity.</u> <u>Nichols</u>, 856 S.W.2d at 400 (citing <u>Lowry</u>, 541 S.W.2d at 133) (emphasis supplied).

The <u>Nichols</u>' court found that there was "no evidence of fraud or other circumstances that would vitiate the agreements." <u>Nichols</u>, 856 S.W.2d at 400. Such are not the facts in the case before us. In essence the <u>Nichols</u>' court found that where there is no evidence in the record addressing such claims as fraud, undue influence or lack of capacity, § 45-2-703(e)(1) will provide conclusive evidence of intention of the parties. Otherwise, the rules laid down in <u>Lowry</u> and acknowledged in <u>Nichols</u> remain the law, and it is that law that we shall follow here.

Turning now to the case under consideration, we will address the issue raised by respondent by considering that issue's component parts. In accordance with the requirements of Lowry inasmuch as the signature card contains clear and unambiguous language that the account created was a joint tenancy with right of survivorship, respondent has the burden of proving that decedent did not intend to create such an account. To that end, respondent asserts that the account is invalid because of first, incapacity and second, undue influence.

## I. The Mental Incapacity Concept.

Respondent initially contends that decedent lacked the mental capacity to participate in the creating of a joint bank account with claimant that granted a right of survivorship. As noted in Lowry, joint bank accounts with a right of survivorship are analyzed under the "contract theory." Simply put, this means that a joint account agreement with the right of survivorship establishes a contract that transfers the proceeds at death by operation of law. The law of contractual capacity controls. See Roberts v. Roberts, 827 S.W.2d 788, 791 (Tenn. Ct. App. 1991). The Roberts' court set forth the following as the test of mental capacity required of the person involved to enter into a contract, stating it must be ascertained whether the person "possesses sufficient mind to understand, in a reasonable manner, the nature, extent, character, and effect of the act or transaction in which he is engaged." Id. The issue thus becomes whether the person entering into the contract has the mental capacity to know the nature and terms of the contract. In order to invalidate the contract, there must be shown at the time of execution "such impairment of reasoning powers as to make the person incapable of acting rationally in the transaction involved, or such mental unsoundness as occasions an inability to comprehend the subject of the contract and its nature and probable consequences."
Id. at 792. Whether a person has contractual capacity is to be determined in the light of facts and circumstances surrounding each case. Id.

It now becomes our responsibility to examine the evidence in this record, applying the "clear and convincing" standard, to ascertain whether the trial court was correct in ruling that decedent lacked the mental capacity at the time this transaction took place in July, 1995. Claimant testified that decedent considered and treated the account in question as hers and that

4

checks on that account were usually written by claimant or her sister, Margaret Kinney. When the account was opened on July 14, 1995, claimant opened up the account and had decedent sign the signature card. Claimant further testified that while decedent was diagnosed with Alzheimer's in December, 1995, she had symptoms of Alzheimer's for some two years, and that she had good days and bad days. She further testified that decedent was signing her checks in July, 1995, although they (claimant and claimant's sister) would have to sit down and explain to decedent what they were doing. Claimant said Margaret Kinney, her sister, was involved in this account and was present when the 1995 account was opened.

Respondent testified that decedent first showed signs of Alzheimer's six or seven years ago, and after three or four years she could not remember conversations of the previous day. Respondent specifically related an event of July 4, 1994, when ten to fifteen members of the family came to decedent's home for a couple of days to clean-up and fix-up. They removed the furniture, cleaned the house and painted, and decedent never knew what was going on.

Jack Holmes, another brother, testified that he saw decedent about every week for over five or six years and that he mowed her lawn once a week for twenty years. In addition, he drove her wherever she needed to go for several years. He stated that he noted a deterioration in her mental capacity several years ago and that it got worse almost every year.

This brother also testified regarding the 1994 housecleaning, which lasted a day and a half. He testified that decedent did not know who she was or who her relatives were who were there half the time. On cross examination, he conceded he was paid $10.00 to cut the grass, but this was not requested by him, but tendered to him by his sister and brother. He estimated that he saw decedent every Friday for twenty years.

When questioned by the court, he stated that in July, 1995 she was very forgetful, confused and in his opinion could not handle her financial or physical needs. He stated that he never knew about the 1984 joint account and did not learn of the 1995 joint account until after decedent's death. Before decedent died, and while she was in the hospital, claimant advised him that she was transferring funds to another bank.

Mary Gilliland, decedent's next door neighbor, stated that she had observed changes in decedent during the last two years. She said that you couldn't depend on what she said and that she often got confused. She confirmed that during the house cleaning session in 1994, decedent

5

did not know her family. Doris Whitaker another neighbor, also testified that decedent showed poor memory prior to 1994. She stated that she saw decedent about three times a week.

The parties' sister, Margaret Kinney, was called as an apparent rebuttal witness. She stated that in 1992, decedent had tried six times to sign a check, but could not remember how to sign her name. Ms. Kinney also testified that she never knew about an account that claimant and their mother had, nor did she know about the joint account created in 1984. She stated that she was present in July, 1995, when the new joint account was opened. She stated that she knew that the 1995 account was in both claimant and decedent's names, but did not know about the survivorship. She stated that she did not know nor was it discussed that her sister was signing jointly with her mother for the right of survivorship. In addition, claimant admitted that she was the one who arranged for the establishment of the joint account which paid a higher rate of interest that was established in July, 1995.

Applying the "clear and convincing" standard to the evidence in this record, we are of the opinion that the evidence does not preponderate against the finding of the trial court that on July 14, 1995, decedent did not have the mental capacity to create a joint account with right of survivorship.

## II. The Undue Influence Issue.

In this state "[i]t is well established that when two parties enter into a confidential or fiduciary relationship and the dominant party receives a gift or other benefit from the other party, a presumption arises that some improper advantage was taken 'either of the confidential relations existing . . . or of the weakness and frailty of the party from whom the benefit was received' thus rendering the transaction invalid." Richmond v. Christian, 555 S.W.2d 105, 107 (Tenn. 1997) (citing Graves v. White, 63 Tenn. 38, 42 (1874)).

In Turner v. Leathers, 191 Tenn. 292, 232 S.W.2d 269 (1950), our supreme court defined "confidential relationship" as follows:

> Whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, *although the transaction could not have been impeached if no confidential relation had existed.*
> Id. at 271 (quoting 3 Pomeroy's Equity Jurisprudence § 956, p. 792 (5th ed.)     (italics in original).

This confidential relationship is not merely a mutual relationship of confidence; rather, the relationship arises where there exists a dominant personality who exercises dominion over the weaker and dominated party.  Iacometti v. Frassinelli, 494 S.W.2d 496 (Tenn. Ct. App. 1973).

First of all, the record reflects that for many years decedent always depended upon someone else to take care of her business affairs.  Initially, it was her husband, prior to his death in the 1970's.  She relied upon her son, Jack Holmes, to take her to the grocery store and beauty parlor and on the claimant to make out her checks.  Respondent described his mother as a very trusting person.  Jack Holmes also testified that it had gotten to the point where she could not shop for groceries as she appeared to be lost.

In addition, as we have already noted, for some period of time claimant made out decedent's checks, for the most part told her what they were for, and it was claimant who initiated the creation of the new account in order to get a higher interest rate.  In our opinion, claimant was clearly the dominant personality and decedent was clearly the weaker subservient personality in this relationship and her dependence upon claimant is clear.  The establishment of this joint bank account with rights of survivorship was clearly a benefit to claimant, and she would receive the entire balance in the account upon decedent's death.  The trial court was correct in our opinion in so finding.  The result of this finding is that undue influence of claimant over decedent was presumed to exist in this transaction.

This presumption that claimant took improper advantage of decedent, thereby invalidating the transaction, is rebuttable and "may be rebutted only by clear and convincing evidence of the fairness of the transaction." Matlock v. Simpson, 902 S.W.2d 384, 386 (Tenn. 1997).  The burden of proof is placed upon the claimant to rebut this presumption of invalidity by evidence meeting the same "clear and convincing standard" as mentioned earlier.  In our opinion the claimant has completely failed to do so.  Rather she offered little or no evidence seeking to rebut this presumption.  We find that the evidence does not preponderate against the finding of the trial court in this regard.

The judgment of the trial court is affirmed in all respects.  Costs in this cause on appeal are taxed to claimant, for which execution may issue if necessary.

_____

TOMLIN, S.J., W.S.



_____

FARMER, J.                    (CONCURS)



_____

LILLARD, J.                   (CONCURS)

8