IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**ROVENE LOWE,**

      Plaintiff-Appellee,

Vs.

**WINNIE SUE SANDERS CANNON
and husband, ROBERT CANNON,**

      Defendants-Appellants.

Henry Chancery No. 16081
C.A. No. 02A01-9707-CH-00147

FILED

April 8, 1998

Cecil Crowson, Jr.
Appellate Court Clerk

FROM THE HENRY COUNTY CHANCERY COURT
THE HONORABLE WALTON WEST, CHANCELLOR

William T. Looney of Paris
For Appellee

Teresa McCaig Marshall of Paris
For Appellants

*AFFIRMED AND REMANDED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**HOLLY KIRBY LILLARD, JUDGE**

This is a suit to establish a resulting trust and to recover for the breach thereof.

Plaintiff/Appellee Rovene Lowe (Lowe) brought suit alleging a resulting trust and seeking

damages arising from an alleged breach by Defendants/Appellants Winnie Sue Sanders Cannon

(Mrs. Cannon) and Robert Cannon (Mr. Cannon). The trial court found that Lowe had proven the existence of a resulting trust and that the Cannons had breached the trust. Consequently, the trial court awarded Lowe $15,840 in damages. The Cannons appeal.

FACTS

Lowe is an elderly widow, who was age 85 at the time of trial. When Lowe's husband died in 1985, she became the sole owner of all their property owned as tenants by the entirety. In 1988 Lowe sold most of her land for $86,250. Lowe became dependent upon her younger brother, Buford R. Sanders (Sanders), and the parties discussed living together in a home. Lowe conveyed approximately five acres of land to Sanders and his wife, now Mrs. Cannon. Lowe testified that she received no compensation for the conveyance, although the deed shows consideration of $10.00. Mrs. Cannon testified that Sanders paid Lowe $4000 for the land. A house was constructed on the land and the house contained a separate "apartment" occupied by Lowe.

The parties dispute the financing of the home's construction. Lowe testified that she made three payments totaling $74,420 for the construction of the house. Lowe maintained that payments were made to Sanders' son, Charles Sanders, who was employed by the builder of the home.[1] Lowe's attorney at the time, Gary J. Swayne (Swayne) also testified about the financing of the home's construction:

> I think we described the whole transaction as far as her funds being used to build this house; there was going to be an apartment placed there for Mr. Buford to take care of her the rest of her life.

Mrs. Cannon, however, testified that she and Sanders paid for the construction of the home.

At trial, Lowe testified that it was the intention of Lowe and Sanders for Lowe to live in the apartment for the duration of her lifetime. Lowe claims that she always assumed that she would predecease Sanders. Therefore, she refused the advice of her attorney, Swayne, to draft a document that expressly provided her with a life estate in the premises. Lowe's alleged intent to occupy the apartment for the remainder of her life was supported by the testimony of Swayne.

Sanders died unexpectedly in 1990, and Sanders' widow, Mrs. Cannon, became the sole owner of the property as surviving tenant by the entirety. Mrs. Cannon married Mr. Cannon in

---

[1] Charles Sanders died in 1990.

2

1992, and the couple resided in the home. Lowe continued to live in the apartment until September of 1993, when her friendship with the Cannons began to deteriorate. Lowe testified that she felt isolated by the Cannons and unwelcome in the home. When the Cannons posted "for sale" signs on the residence without notifying Lowe, Lowe decided to move elsewhere. The Cannons sold the home to third parties in 1995.

On August 4, 1995, Lowe filed this Complaint, alleging that she was the beneficiary of an oral trust that was executed by her and her brother. Lowe alleges that the terms of the trust were for Lowe to live in the apartment portion of the residence for the remainder of her lifetime. Lowe claims that the Cannons breached the trust by selling the home, effectively evicting her from the premises. Lowe sought damages accruing from this alleged breach.

Following a bench trial, the trial court held that Lowe retained a resulting trust in the apartment. Based on the evidence presented at trial, the trial court found that Lowe and Sanders "had a clear understanding" that Lowe would reside in the apartment for the remainder of her life and assessed damages at $15,840.

## ISSUES

The first issue for review is:

> 1. Was the Chancellor's finding of a resulting trust between the Plaintiff and her deceased brother, Buford Sanders, proven by evidence that is "clear, cogent and convincing"?

The Tennessee Supreme Court has described the creation and application of a resulting trust as follows:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises. Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.

*In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) (quoting 76 Am. Jur. 2d *Trusts* § 166 (1992)). To establish a resulting trust, the beneficiary must actually pay for or be obligated to pay for "part of the original transaction of purchase" at the time that the transaction takes place.

*Rowlett v. Guthrie*, 867 S.W.2d 732, 735 (Tenn. App. 1993). Due to their nature, resulting trusts are usually proven by parol evidence. *In re Estate of Wardell ex rel. Wardell v. Dailey*, 674 S.W.2d 293, 295 (Tenn. App. 1983); *Rowlett,* 867 S.W.2d at 735. An alleged beneficiary of a resulting trust bears the burden of proving the trust's existence by "clear, cogent and convincing" evidence. *Nichols*, 856 S.W.2d at 403 (quoting *Wardell*, 674 S.W.2d at 295). Therefore, our review of the record is aimed at determining whether there is clear and convincing evidence to support the trial court's finding.

The evidence in the record supports the trial court's finding that Lowe established the existence of a resulting trust in the apartment. Lowe's testimony was supported by the testimony of Swayne, a disinterested witness. *Cf. King v. Warren*, 680 S.W.2d 459, 461 (Tenn. 1984) ("[T]he testimony of a single, interested witness would not be sufficient to establish a trust by that quantum of proof."). Based on the testimony by Lowe and Swayne, the trial court was justified in finding that Lowe substantially contributed to the construction of the house. *See Rowlett*, 867 S.W.2d at 735. Furthermore, Lowe and Swayne both testified that Lowe and Sanders intended for Lowe to live in the apartment for the remainder of her life. When the resolution of the issues in a case depends upon the truthfulness of witnesses, the trial judge who has the opportunity to observe the witnesses in their manner and demeanor while testifying is in a far better position than this Court to decide those issues. *Mays v. Brighton Bank*, 832 S.W.2d 347, 351-52 (Tenn. App. 1992). The weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. *Id*. at 352; *Town of Alamo v. Forcum-James Co*., 327 S.W.2d 47, 49 (Tenn. 1959). After a careful examination of the record, we find that the proof establishes the existence of the trust by "clear, convincing and cogent" evidence. *Nichols*, 856 S.W.2d at 403.

The next issue for review is:

> 2. Was the Chancellor's finding of the Defendants' breach of a resulting trust contrary to the facts presented at the trial and, instead, should the Plaintiff's leaving the residence in question be considered a breach or abandonment of the oral trust?

The evidence supports the trial court's finding that the Cannons breached the trust when they attempted to sell the residence without the consent of Lowe. The Cannons argue,

alternatively, that Lowe abandoned the trust by moving out of the apartment on her own accord before the home was sold. The Cannons do not cite authority from any jurisdiction that recognizes the abandonment of an oral trust. Even if such a notion were recognized in this state, this issue is irrelevant since the Cannons breached the trust before Lowe left her apartment.

Accordingly, the judgment of the trial court is affirmed in all respects, and the case is remanded for such other proceedings as are necessary. Costs on appeal are assessed to the Appellants.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**HOLLY KIRBY LILLARD, JUDGE**

5