IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 11, 2004 Session

**RALPH E. HARWELL, INTERIM CONSERVATOR OF THE PROPERTY, ESTATE, AND FINANCIAL AFFAIRS OF CAROLYN MITCHELL BROWN, v. JOHN H. WATSON, JR.**

**Direct Appeal from the Chancery Court of Knox County
No. 150423-2     Hon. Sharon Bell, Chancellor**

---

**No. E2003-01796-COA-R3-CV  - FILED JUNE 25, 2004**

---

Conservator brought action to recover assets for the Estate of Carolyn Brown which had been given to defendant by Brown.  The Chancellor invoked the constructive trust doctrine and ordered assets returned to the Estate.  On appeal, we affirm.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., E.S.,  delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and WILLIAM H. INMAN, SR.J., joined.

Gerald L. Gulley, Jr., Knoxville, Tennessee, for Appellant, John H. Watson, Jr.

Ralph E. Harwell, Knoxville, Tennessee, *pro se.*

**OPINION**

Plaintiff conservator of the estate of Carolyn Brown, brought this action against defendant, John H. Watson, Jr., seeking the return of certain property that Ms. Brown conveyed to Watson.

Plaintiff alleged that Watson initially began working for Brown as a chauffeur, and that as time passed, the two established a personal relationship, and Watson began advising Brown regarding her finances, that Watson exercised dominion and control over Brown, and  Brown gave

Watson a power of attorney in June of 2000.

Plaintiff averred that Brown was diagnosed with Alzheimer's in November 2000, but that her mental capacity had been diminishing for some time prior to the diagnosis. Plaintiff further alleged that in 1998, Brown began transferring her assets to Watson to "protect" them, and that Brown had transferred to Watson five condominiums in Knoxville, property on Corning Road in Knoxville, property in Sevierville, a condominium in Colorado, a Mercedes, and had placed Watson's name on her bank accounts and credit cards. Plaintiff charged that Brown had given money to Watson, and had incurred a large amount of debt, such that her financial condition was precarious and that there might not be funds to care for her.

The Complaint sought return of the assets to the Brown Estate, as well as a Judgment against Watson for damages.

Watson answered, denying the allegations of the Complaint, and subsequently the case was tried before the Chancellor who following trial filed an Opinion detailing numerous findings, and adopted the findings of Dr. Dougherty, a Board Certified neurologist, specializing in cognitive problems, specifically Alzheimer's. Dr. Dougherty saw Brown for the first time on September 21, 2000, and diagnosed Brown as suffering from probable dementia of the Alzheimer's type, and ordered diagnostic tests. The Chancellor, in her opinion, said:

> Based upon the severity of Brown's condition in September 2000, the history that was provided to him by the defendant, his knowledge of the nature of the history of Alzheimer's disease, and his ten (10) years of clinical experience with Alzheimer's disease, Dr. Dougherty concluded that Brown had a very substantial cognitive problem in 1998, and was not competent to handle her financial and legal affairs.

The Court found that Brown and Watson had a relationship where Brown placed her trust and confidence in Watson, but the proof did not establish Watson exercised actual dominion and control over Brown. However, the Court found that after Brown executed the power of attorney on June 6, 2000 in Watson's favor, that a legal, confidential relationship existed, which created a rebuttal presumption of undue influence, and that Watson had failed to rebut this presumption and transfers of the property after that point would be set aside due to undue influence.

The Court further found that Brown transferred the real estate to Watson for "safe keeping", with the understanding that it would be available to her if she needed it. The Court found that Brown continued to claim the property on her tax returns, and continued to pay taxes and assessments on the same from her own funds. The Court found that although Watson's trial testimony was different, he admitted in deposition, that Brown told him she wanted him to have control of her property so he could take care of her. The evidence does not preponderate against the Chancellor's findings of fact. Tenn. R. App. P. 13(d).

The Court ruled that all of the real estate transfers should be set aside, under a theory

of constructive trust, and that Watson was liable for $20,740.86, as part of the Judgment. The Court also entered an order affirming findings of the Special Master regarding the Sevierville property, who found Watson liable for $62,108.00 of expenses related to that property.

The issues raised by Watson on appeal are:

1. Whether the trial court erred in imposing a constructive trust, where there was no fraud or undue influence?

2. Whether the trial court erred in ordering that the transfers of property be set aside, where there was no proof that Brown wanted to retain a beneficial interest in the property which would support a resulting trust?

3. Whether the trial court erred in ordering that the property transfers be set aside, where the preponderance of the evidence showed that Brown wanted to give these properties to Watson?

The Chancellor ruled that the property transfers in 1998 should be set aside pursuant to a constructive trust theory, because the court found that Brown transferred the real estate to Watson for "safe keeping", and that the property would be available to her if she needed it. The Court held that this was evidenced by Brown continuing to claim the property on her tax returns, and continuing to pay taxes and assessments on the same from her own funds, and that Brown had confided in others that she had merely transferred the property to Watson to "keep it safe", and that he would transfer it back upon request. The evidence does not preponderate against the Trial Court's findings of fact on this issue. Tenn. R. App. P. 13(d).

Watson argues, however, that there can be no constructive trust in the absence of a bad act on his part. Constructive trusts apply in situations where property is obtained in violation of a duty owed; as a result of fraud, duress, or undue influence; or whenever a person receives property "with notice that another is entitled to its benefits." *Browder v. Hite*, 602 S.W.2d 489 (Tenn. Ct. App. 1980). Thus, a constructive trust has been held to apply whenever a party "has obtained or holds the legal right to property which he ought not, in equity and good conscience, hold and enjoy", and does not necessarily require a "bad act" by the beneficiary. *Jenkins Subway, Inc. v. Jones*, 990 S.W.2d 713, 725 (Tenn. Ct. App. 1998); *Roach v. Renfro*, 989 S.W.2d 335 (Tenn. Ct. App. 1998).

Similarly, resulting trusts arise where the legal estate is disposed of, or acquired, without bad faith, and under such circumstances that Equity infers or assumes that the beneficial interest in said estate is not to go with the legal title. Such trusts are sometimes called a presumptive trust, because the law presumes it was "intended by the parties, from the nature and character of their transactions." *Browder v. Hite,*. As this Court has explained:

A resulting trust arises from the nature of circumstances of consideration involved

in a transaction whereby one person thereby becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and although there is an absence of fraud or constructive fraud.

*Rowlett v. Guthrie*, 867 S.W.2d 732, 735 (Tenn. Ct. App. 1993).

Both theories rest upon equitable principles, and are invoked to prevent unjust enrichment. *In re Estate of Nichols*, 856 S.W.2d 397 (Tenn. 1993); *Jenkins Subway, Inc.* Either of these doctrines establishes a basis to uphold the Court's Judgment in this case. The proof is clear that Brown transferred the disputed properties to Watson to be held in trust for her, so that they would be safely kept and so that Watson would "take care of her." This is evidenced by Brown's statements to others, and was admitted by Watson in his deposition. Brown told others that Watson knew the properties were still hers, and that he would give them back if she asked him. Brown paid for the properties, paid all expenses related to the same, and counted the expenses and rental income on her tax returns. When she was questioned regarding whether these properties were gifted to Watson by her accountant, she replied that they were not. Further, Brown directed that the revenue checks and assessments on the rental properties be sent to her, even after the property was put in Watson's name.

Brown never relinquished control over the properties to Watson, and in fact, Watson admitted that anything he did relative to the properties was at Brown's direction, and that Brown paid for "everything." Brown treated the properties as hers when she drafted her last Will and never told her attorney that she had conveyed any interest in the properties to Watson.

There is clear and convincing evidence[1] to require that the properties in dispute be transferred back to Brown's Estate under equitable principles. We affirm the Trial Court on this issue.

Plaintiff argues that the Trial Court should have found undue influence by Watson, even before the execution of the power of attorney which created a confidential relationship as a matter of law. However, we pretermit this issue, because we are satisfied the Chancellor returned the assets to the Estate on sound equitable principles.

Finally, plaintiff asks that the Judgment be amended such that the Colorado condominium be transferred to Brown free from any debts placed on the property by Watson.

---

[1]    As the Supreme Court has explained, "While an implied or resulting trust may be established by parol evidence, yet both upon reason and authority the courts will not enforce it, unless it be established by the most convincing and irrefragable evidence. In other words, it must be sustained by proof of the clearest and most convincing character." *In re Estate of Nichols*, 856 S.W.2d 397, 402 (Tenn. 1993).

Watson testified at trial that he had taken out a $100,000.00 loan against the condo in order to pay his legal fees and living expenses. The record shows that the proposed Judgment originally stated that the property transfer would be set aside and the title to the same divested out of Watson and vested in Brown "free and clear of any individual liabilities of the Defendant", but the quoted language was marked out and said change was initialed by the attorneys. The Judgment was then signed as approved by both attorneys, and the record does not reflect that the issue was ever brought before the Trial Court, by either a Rule 59 or 60 motion, or otherwise. Without proof that this issue was actually raised at the trial court level, it cannot be raised for the first time on appeal. *State Dept. of Human Serv. v. Defriece*, 937 S.W.2d 954 (Tenn. Ct. App.1996).

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to John H. Watson, Jr.

_____
HERSCHEL PICKENS FRANKS, P.J., E.S.