IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2019 Session

**JAMES MOSES, ET AL. V. REBECCA ELROD, ET AL.**

**Appeal from the Chancery Court for Meigs County**
**No. 4624      Frank V. Williams, III, Chancellor**

_____

**No. E2019-00117-COA-R3-CV**

_____

The plaintiffs appeal the trial court's decision concerning the ownership of real property. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J. and D. MICHAEL SWINEY, C.J., joined.

H. Franklin Chancey, Cleveland, Tennessee, for the appellants, James and Nancy Moses.

H. Chris Trew, Athens, Tennessee, for the appellees, Rebecca Elrod, Christopher Hennessee, and Matthew Moses.

**MEMORANDUM OPINION[1]**

In May 1999, Rebecca and Jack Elrod (collectively "the Elrods") purchased the property at issue for $35,000 after obtaining a loan of approximately $47,500. The remainder of the loan was used to improve the property. The original loan was made for a term of five years with a balloon payment due at the end of the term. The loan was refinanced when the balloon payment became due and again in 2007.

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides as follows:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

Since the purchase of the property, Kim Hennessee Moses (Mrs. Elrod's daughter, who is now deceased); her husband, James Moses; and son, Matthew Moses have lived in the residence and remitted payment throughout their residency. At times, the Elrods also made payments. There is no record of payments made, and neither Kim nor James had access to the mortgage account. Payments were made by cash, check, or automatic transfer but were sporadic until Kim's death in 2006. Since that time, James submitted monthly payments through social security death benefits paid to him as trustee for Matthew. In 2007, the Elrods obtained another $20,000 loan for further renovations completed by James.

James married Nancy Moses in December 2012, and he and Nancy ("Plaintiffs") completed additional renovations. Mrs. Elrod transferred the property to Christopher Hennessey and Matthew Moses in December 2017. Plaintiffs filed suit against Mrs. Elrod, Christopher, and Matthew (collectively "Defendants"),[2] claiming that the payments made to the Elrods were in fulfillment of an oral loan obligation for the purchase of the property. They requested the imposition of a constructive trust. Defendants denied any existence of an oral loan and claimed that even if one had been negotiated, any such loan would be prohibited by the statute of frauds. They claimed that the home was purchased for James and Kim to rent but that the Elrods always intended to retain ownership of the property and later transfer the property to Matthew.

The case proceeded to a bench trial, at which James claimed that the Elrods agreed to finance the residence because he could not obtain a loan due to his credit. He claimed that Mrs. Elrod advised him of their monthly payment obligation and that they either remitted payment through an automatic transfer or in cash. He admitted that his name was not included on the deed to the property at the time of purchase and that their agreement was not in writing. He testified that Mrs. Elrod visited the house often and was aware of the extensive renovations completed by him. Further, she referred to the residence as his house and asked permission to move a mobile home onto the property.

However, James admitted that the Elrods purchased the materials for the initial renovations and for the renovations in 2007. He further conceded that he did not reside in the house for the entirety of the time prior to Kim's death because they had a disagreement that led to him moving out. He agreed that she also did not live in the residence at some point while they were no longer in a relationship. He admitted that he may have also missed a few payments but claimed that he remitted payment throughout the majority of his residency. He confirmed that he remitted payment from Matthew's social security benefits following Kim's death.

---

[2] Mr. Elrod is deceased.

James testified that he and Nancy also completed extensive renovations on the residence using their own funds. He and Nancy introduced evidence concerning their extensive renovations of the property beyond that paid for by the Elrods. Nancy stated that she would not have invested money in repairs had she been made aware that the property would not transfer to them. She claimed that James advised her that the property would become theirs as soon as the loan was fulfilled. She acknowledged that she had two conversations with Mrs. Elrod in which she asked whether she would be thrown out of the house if her husband passed away. She noted that Mrs. Elrod did not offer a response. She acknowledged that Mrs. Elrod also never specifically advised her that the property would be transferred to them once the loan obligation was fulfilled.

James Imlay testified that he lives two doors down from the Plaintiffs. He recalled that he assisted with some renovations on the property and did not require payment for his assistance. He confirmed that Mrs. Elrod asked for the Plaintiffs' permission to move a mobile home onto the property.

Mrs. Elrod admitted that her daughter asked her to purchase the property for her to live in with her son. She recalled that Kim missed a few payments and that she and Mr. Elrod paid in her stead. She denied ever advising either Kim or James that the property would transfer to them once the mortgage indebtedness was paid in full. She noted that they were not added to the deed or listed as co-borrowers. She stated that she and Mr. Elrod purchased the materials for renovations and that James completed the work without payment. She noted that James did not live at the residence for six months or more prior to Kim's death and that Kim also lived elsewhere for a period of time. She recalled that she cleaned the residence and put the house on the market before they returned.

Mrs. Elrod agreed that the Plaintiffs completed extensive renovations with their own money. She claimed that she advised the Plaintiffs that the property would be transferred to Matthew once he reached the age of majority.[3] She conceded that she asked permission to move a mobile home onto the lot but explained that she felt it was polite to ask because she would then be living beside them.

Following the hearing, the trial court found in favor of Defendants, finding that the statute of frauds prohibited the transfer of property in this manner, absent sufficient evidence establishing a resulting trust. The court declined to impose a trust and specifically credited Mrs. Elrod's testimony, finding that she purchased the property to provide a place for her daughter to reside and that the rental payments were made to assist her in fulfilling the loan obligation in exchange for their continued occupancy. The court further found that while Mrs. Elrod was likely benefiting from the improvements

---

[3] Christopher Hennessey confirmed that Mrs. Elrod also told him that the property would be transferred to Matthew once he reached the age of majority.

made to the property, it had no recourse to award any relief based upon the record before it. The court explained that the Plaintiffs had only remitted some receipts and had not estimated the labor expended by James in renovating the property.

This appeal followed in which the Plaintiffs presented the following issues for our review: (1) whether the court erred by refusing to award ownership to Plaintiffs and (2) whether the court erred in denying relief pursuant to the doctrine of unjust enrichment. We review a trial court's findings of fact de novo with a presumption of correctness unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). We afford great deference to a court's credibility determinations because the court is in the best position to observe witnesses and evaluate their demeanor. *Hughes v. Metro. Govt. of Nashville and Davidson Cnty.*, 340 S.W.3d 352, 360 (Tenn. 2011). We review questions of law de novo with no presumption of correctness. *Whaley v. Perkins*, 197 S.W.3d 665, 670 (Tenn. 2006).

In Tennessee, an oral contract for the sale of land is invalid unless the agreement or promise was later made in writing by the parties involved in the sale. Tenn. Code Ann. § 29-2-101(a)(4). The Parties agree that the alleged agreement was not memorialized in writing and that the Plaintiffs' ability to establish ownership of the property is dependent upon the finding of a resulting trust.

Our Supreme Court has provided the following guidance concerning the imposition of a resulting trust:

> The imposition of a resulting trust is an equitable remedy; the doctrine of resulting trust is invoked to prevent unjust enrichment. *Such a trust is implied by law from the acts and conduct of the parties and the facts and circumstances which at the time exist and surround the transaction out of which it arises.* Broadly speaking, a resulting trust arises from the nature or circumstances of consideration involved in a transaction whereby one person becomes invested with a legal title but is obligated in equity to hold his legal title for the benefit of another, the intention of the former to hold in trust for the latter being implied or presumed as a matter of law, although no intention to create or hold in trust has been manifested, expressly or by inference, and there ordinarily being no fraud or constructive fraud involved.
>
> While resulting trusts generally arise (1) on a failure of an express trust or the purpose of such a trust, or (2) on a conveyance to one person on a consideration from another—sometimes referred to as a "purchase-money resulting trust"—they may also be imposed in other circumstances, such

that a court of equity, shaping its judgment in the most efficient form, will decree a resulting trust—on an inquiry into the consideration of a transaction—in order to prevent a failure of justice. However, the particular circumstances under which a resulting trust may arise varies from jurisdiction to jurisdiction.

*In re Estate of Nichols*, 856 S.W.2d 397, 401 (Tenn. 1993) (quotation omitted) (emphasis added). This court has further established that

> [W]here the facts are disputed as to the purpose of the purchase of the property, . . . Tennessee law requires one of the following to be shown by clear and convincing evidence in order to establish a resulting trust: (1) that the party claiming the trust contribute to the initial payment of the purchase price; or (2) that the party claiming the trust incurred an absolute legal obligation to pay at the time of the purchase of the property, typically by signing a promissory note allowing the record owner to purchase the property.

*Patterson v. Patterson*, No. M2016-00886-COA-R3-CV, 2017 WL 1433310, at *8 (Tenn. Ct. App. Apr. 20, 2017). The Plaintiffs failed to establish either scenario by clear and convincing evidence in this case. The record reflects that the Elrods secured the loan without help from either James or Kim and that the Elrods also paid some mortgage payments when needed and tended to the residence when it was vacant. We affirm the court's denial of the imposition of a resulting trust.

Next, we must consider whether the Plaintiffs were entitled to some form of recovery through the doctrine of unjust enrichment as a result of their extensive renovation of the property and regular monthly payments. Defendants argue that the Plaintiffs did not plead unjust enrichment and did not ask for an award of monetary damages. Further, they claim that it would not be unjust for them to retain any benefit from the improvements when the Plaintiffs were advised that the property would eventually transfer to Matthew. They note that any damages under such a theory would be limited to the value of the improvements, not the cost of the improvements.

Our review of the record reveals that while the doctrine of unjust enrichment was not specifically pled, the Plaintiffs claimed the improvements made by them in support of their request for relief in their amended complaint. Further, the court considered but ultimately rejected recovery for the benefit conferred upon Mrs. Elrod based upon the evidence presented. *See* Tenn. R. Civ. P. 15.02 ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as

may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.").

Our courts have utilized different tests in determining whether it should impose a contractual relationship between the parties based upon the theory of unjust enrichment. One such test is as follows:

> (1) There is no existing, enforceable contract between the parties covering the same subject matter;
> (2) The party seeking recovery proves that it provided valuable goods or services;
> (3) The party to be charged received the goods or services;
> (4) The circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and
> (5) The circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

*Doe v. HCA Health Services of Tennessee, Inc.*, 46 S.W.3d 191, 197-98 (Tenn. 2001). A second test presents nearly the same factors in the following condensed form:

> (1) a benefit conferred upon the defendant by the plaintiff;
> (2) appreciation by the defendant of such benefit; and
> (3) acceptance of such benefit under circumstances that it would be inequitable for the defendant to retain the benefit without payment of the value thereof.

*Estate of Lambert v. Fitzgerald*, 497 S.W.3d 425, 458 (Tenn. Ct. App. 2016) (internal quotations and citations omitted). Neither test has been identified as the bright-line rule; however, our courts have determined that the most significant requirement in establishing an unjust enrichment claim is whether retaining the benefit would be unjust. *Id.*

Here, some improvements were made with Mrs. Elrod's money, while others were made by Plaintiffs from their own funds. While some receipts were provided, there was no testimony introduced to establish the increase in value of the property as a result of any improvements made through the sole effort of Plaintiffs. Further, Mrs. Elrod has transferred the property to Matthew, along with her son, in light of Matthew's young age at the time of the transfer. With all of the above considerations in mind, we affirm the court's denial of any relief based upon the theory of unjust enrichment.

In consideration of the foregoing, we affirm the court and remand for such further proceedings as may be necessary. Costs of this appeal are taxed equally to the appellants, James and Nancy Moses.

_____
JOHN W. McCLARTY, JUDGE